IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:20-cv-00350-PAB-MEH

DR. WILLIAM MOREAU,

      Plaintiff,

v.

UNITED STATES OLYMPIC & PARALYMPIC COMMITTEE,

      Defendant.

---

## DEFENDANT'S MOTION FOR INTERIM RESTRICTION OF ACCESS TO PLAINTIFF'S COMPLAINT

---

Defendant United States Olympic Committee d/b/a United States Olympic & Paralympic Committee ("Defendant" or "USOPC"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 5.2 and D.C.COLO.LCivR 7.2(2), requests that access to the Complaint be temporarily restricted pending removal of Defendant's privileged materials from that document. As discussed more fully below, the urgent action requested in this Motion is necessary to preserve the USOPC's privilege pending resolution of Plaintiff's unlawful efforts to use the USOPC's privileged and misappropriated materials in the present lawsuit. Immediate action is necessary to mitigate the damage caused by Moreau's conduct and preserve the USOPC's privileges.

## I. CERTIFICATE OF CONFERRAL PURSUANT TO D.C.COLO.LCIVR 7.1.

Counsel for Defendant has conferred with counsel for Plaintiff about the relief requested in this Motion. Plaintiff's counsel opposes the relief requested herein.

## II. <u>FACTUAL BACKGROUND</u>

William Moreau was employed by the USOPC as the head of its Sports Medicine department for nearly ten years, holding a Vice President position for his last two years with the organization. His job was to coordinate and oversee the USOPC's health care and medical services programs provided for U.S. athletes. Moreau's job required regular coordination with the USOPC's in-house legal team to obtain legal advice concerning Sports Medicine's services and initiatives, as well as legal advice related to specific incidents or events implicating Sports Medicine in some way.

Immediately upon termination, Moreau retained legal counsel to demand additional severance. Upon information and belief, Moreau gave privileged materials he had taken from the USOPC to his counsel at that time. In the summer of 2019, Moreau's legal counsel made several demands and threats to file suit but never disclosed that they had in their possession the privileged and confidential materials that Moreau had taken from the USOPC. When the USOPC did not acquiesce to Moreau's demands, Moreau filed his Complaint on February 5, 2020. [Doc. 1-2].

Moreau has two claims which arise from the same discrete act by the USOPC – Moreau's May 2019 termination. Yet his Complaint is 30 pages long and contains 164 separate numbered paragraphs, many of which are, by Moreau's own admission, entirely unrelated to that termination. *See, e.g.,* Moreau 06.19.20 Depo. Tr. 323:10-234:11, filed as Exhibit A with Defendant's Motion to Strike. Interspersed in these narratives, Moreau sometime references conversations and information which, to the extent they have any bearing on reality at all, are clearly privileged. Prior to filing the Complaint, neither Plaintiff nor his counsel made any inquiry with Defendant, its counsel, or the Court concerning the propriety of their intended filing or whether there were any

Active/51974432.1

privilege or confidentiality objections to the materials being filed.

That the majority of the allegations in the Complaint are factually, or contextually, inaccurate, complicated the assertion of privilege. However, when Defendant filed its Answer on April 9, 2020, every time there appeared to be even a suggestion that Moreau was improperly seeking to waive the USOPC's privilege, the USOPC objected and specifically requested that each of these allegations be stricken from the Complaint pursuant to Fed. R. Civ. P. 12(f).

Even after receiving the USOPC's Answer - clearly, unequivocally, and repeatedly asserting and preserving the USOPC's attorney/client privilege - neither Plaintiff nor his counsel disclosed that they had in their possession voluminous materials Moreau took from the USOPC, including materials which are facially privileged. Similarly, in conferring with Plaintiff's counsel regarding the Motion to Modify the Scheduling Order, filed by Defendant on May 11, 2020, Defendant – who was still investigating the scope of Plaintiff's misappropriation of its property brought to its attention by Plaintiff's initial disclosure – raised concerns regarding the propriety of Moreau having that property in his possession. Plaintiff and his counsel again declined to address the fact that there were additional, undisclosed, materials in their possession – including materials that were facially privileged - or the fact that they had incorporated such privileged materials into their Complaint.

It was not until documents were exchanged by the parties in discovery that the extent of Moreau's misappropriation of USOPC materials – including privileged materials – began to come to light. Similarly, Moreau's counsel's decision to use those misappropriated, and privileged, materials in this litigation became clear. Indeed, cross referencing the allegations in the Complaint with the misappropriated documents Moreau has produced in discovery brought to light that

additional allegations in the Complaint contain references to or quotations from privileged materials. The misappropriation – and intended use – of the USOPC's privileged materials in this litigation was also confirmed by both Moreau and his legal counsel during Moreau's deposition on June 19, 2020. Thus, when the USOPC filed its First Amended Answer on June 30, 2020, the Amended Answer incorporated additional objections to such materials.   [Doc. 28-2].

At Defendant's request, counsel for the parties conferred regarding this privilege issue on the next date after Moreau's deposition on which Plaintiff's counsel was available, which was June 25, 2020. Despite undersigned's repeated requests, Moreau's counsel declined to take any steps to preserve the USOPC's privilege pending resolution of this issue by the Court.

### III.  REQUEST FOR RELIEF

**A.     The USOPC requests that access to Plaintiff's Complaint be temporarily restricted.**

Pursuant to D.C.COLO.LCivR 7.2(c)(1) the USOPC requests that access to Plaintiff's Complaint be temporarily restricted, as many of the materials that Moreau intends to use in the present litigation are protected by the USOPC's attorney-client privilege, including the potentially privileged information found within paragraphs 60, 65-66, 68-72, 83-87, 89, 107-110, 112, 115, 124-126, 130, and 133-135 of the Complaint. Plaintiff had no right to use such materials at all, much less include these materials in a publicly available filing and particularly without seeking leave from the USOPC and/or the Court to do so first. *Raymond v. Spirit AeroSystems Holdings, Inc.,* No. 16-1282-JTM-GEB, 2017 WL 2831485, *15 (D. Kan. June 30, 2018) ("Instead of 'lying in wait' with the documents . . . obligations of decency, fundamental fairness, and frankly the golden rule, should have prompted counsel to notify Defendants in order to avoid problems later. . . . [counsel may not] sidestep[] the orderly discovery process. . . [or be] the ultimate gatekeeper .

. . of Defendant's claims of confidentiality and privilege").

**B.      Restricting access to the Complaint is the only way to protect the USOPC's privilege interests, which clearly outweigh the presumption of public access.**

As contemplated by D.C.COLO.LCivR 7.2(c)(2) restricting access to the Complaint is the only way to protect the USOPC's privilege interest, an interest which outweighs the presumption of public access. Although "there is a strong presumption of public disclosure" for materials filed with the Court, the "exceptions to that presumption are trade secrets, privileged information and information required to be kept secret by statute." *Bait It v. McAleenan,* 410 F.Supp.3d 874, n2 (N.D. Ill. 2019) (internal citations omitted). Here, the content of Plaintiff's Complaint, particularly the materials in the above enumerated paragraphs, implicates the attorney/client privilege, "the oldest of the privileges for confidential communications known to the common law." *U.S. v. Zolin,* 491 U.S. 554, 562 (1989) (internal citations and quotations omitted).

The attorney/client privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *Matter of Grand Jury Subpoena Duces Tecum,* 697 F.2d 277, 278 (10th Cir. 1983) (internal citations and quotations omitted). "The importance of the attorney-client relationship is evidenced by the various privileges which protect it." *U.S. v. Colo. Sup. Ct.,* 189 F.3d 1281, 1287 (10th Cir. 1999). Under this privilege, a "corporation is entitled to refuse to disclose confidential communications protected by the attorney-client privilege and it may prevent its attorneys or employees from disclosing such communications." *Sims v. Roux Labs., Inc.,* No. 06-10454, 2007 WL 2571941, *1 (E.D. La. Aug. 31, 2007) (citing *Nguyen v. Excel Corp.,* 197 F.3d 200, 206 (5th Cir. 1999)). Both federal and Colorado law prevents the use of "any communication made by the client to [an attorney] or [the attorney's] advice given thereon in the course of professional

employment." *Genova v. Longs Peak Emergency Physicians, PC,* 72 P.3d 454, 464 (Colo. Ct App. 2003) (citing C.R.S. § 13-90-107(1)(b) (2002)).

> **C.     The USOPC will be seriously injured if Plaintiff's Complaint continues to be publicly available pending removal of Defendant's privileged materials improperly included in that document by Plaintiff.**

Plaintiff's efforts to unilaterally waive the USOPC's privilege is the precise type of "clearly defined and serious injury that would result if access is not restricted" which D.C.COLO.LCivR 7.2(c)(3) is intended to protect against. "Preliminary questions concerning . . . the existence of a privilege . . . shall be determined by the court." Fed. R. Evid. 104(a). This is why a party "must not use or disclose [potentially privileged] information until the claim" of privilege "is resolved." Fed. R. Civ. P. 26(b)(5). Plaintiff's decision to include privileged information in his Complaint not only implicates the USOPC's rights, to the extent Plaintiff asserts that the privilege does not apply, his unilateral action in including facially privileged materials in his Complaint also interferes with the Court's right to make the "preliminary" determination concerning the existence and applicability of the privilege.

Ultimately, the privileged materials in Moreau's Complaint should be stricken. *Alldread v. City of Grenada, Miss.,* No. WC89-93-B-D, 1991 WL 501642, *7 (N.D. Miss. Aug. 5, 1991) (explaining that a motion to strike is appropriate when a party files a pleading with the Court "which make[s] use of any evidence found privileged" by the Court); *accord Hensley v. City of Port Hueneme,* No. CV 17-08422-AB (Ex), 2018 WL 5903963 (C.D. Cal. March 21, 2018) (striking "the portions of Plaintiff's Complaint that directly quote" a privileged memorandum and reaffirming that including privileged information "in his Complaint does not mean that the privilege has been waived" if the privilege does not belong to him); *Heckler & Koch, Inc. v.*

6

*German Sport Guns GmbH,* No 1:11-cv-01108-SEB-TAB, 2014 WL 12756372, *5 (S.D. Ind. May 15, 2014) ("It is undoubtedly true, as Counter Defendants point out, that evidence subject to the attorney-client privilege is inadmissible, and may be stricken from a pleading."). Pursuant to the Court's July 6, 2020, Minute Order, such relief is being requested in a separate motion. [Doc. 33]. On such motion, "those portions of a complaint that make use of privileged communications may be removed from the complaint." *Sims,* 2007 WL 2571941 at *1. In the meantime, a failure to restrict access to the Complaint, which contains material that the USOPC contends is protected by attorney-client privilege, would irreparably damage the attorney-client privilege, the loss of which constitutes a serious injury. *See, e.g., Mohammed v. Holder,* No. 07-cv-02697-MSK-BNB, 2014 WL 1493476, *4 (D. Colo. April 15, 2014) (suggesting that, although not properly raised in that case, "attorney-client or attorney work product privileges" are proper justifications for withholding public access to documents filed with the Court); *Alewel v. Dex One Serv.,* No. 13-2312-SAC, 2013 WL 6858504, *12-13 (D. Kan. Dec. 20, 2013) (denying a party's motion to restrict access after finding the "public's interest outweighs the parties' interest" because the parties "failed to articulate substantial interests recognized by legal authority . . . [such as asserting the] documents [are] covered by a privilege, such as the attorney-client privilege").

   **D.    Due to Plaintiff's refusal to take any action to preserve the USOPC's privilege rights pending resolution of this matter by the Court, no alternative to restriction is practicable and only restriction will adequately protect the USOPC's privilege interests.**

   In light of the ongoing harm caused by the USOPC's privileged information being publicly available – through no decision or action on the part of the USOPC – restricting access is necessary. As required under D.C.COLO.LCivR 7.2(c)(4), the USOPC attempted to identify an alternative to restricting access that would adequately protect the USOPC's privilege rights and the Court's right

to address any dispute there may be concerning that privilege. Specifically, in order to balance the public's interest in access to court filings with the USOPC's interests, the USOPC first sought to resolve this matter with Plaintiff's counsel, who declined to amend the Complaint or put forth any other proposed alternative for addressing this problem.

Defendant has narrowly tailored its request to restrict access. Defendant seeks only to limit access to the Complaint for the finite amount of time it takes to permit Plaintiff to raise any arguments he, or his counsel, may have that the information concerning Moreau's communications with the USOPC's in-house counsel while employed at the USOPC is not protected by attorney-client privilege or that the inclusion of that information in the Complaint is not reasonably likely to affect that privilege. The USOPC anticipates that an amended operative Complaint with the USOPC's privileged information removed will have to be filed upon resolution of this matter and has no objection to this Complaint being made publicly available. *See, e.g., Otero v. Vito,* No. 5:04CV211DF, 2005 WL 1429755, *2 (M.D. Ga. June 15, 2005) (ruling plaintiff "cannot discover or provide" defendant's privileged information in his complaint, any such statements or references in the complaint were "impertinent" under Rule 12(f), and directing the plaintiff "to file a revised Amended Complaint that complies with the Court's instructions" to strike such materials).

### E.     Level 1 Restriction is Requested

Pursuant to D.C.COLO.LCivR 7.2(b) and (c)(5), Level 1 restriction, limiting access to the Complaint to the parties and the Court, is requested. While opposing counsel does not have a right to review or use the privileged materials contained in the Complaint, as the saying goes "the cat is out of the bag." Indeed, Plaintiff's counsel has stated that they have reviewed all of the privileged materials relied upon in making the objectionable allegations in the Complaint and has declined to

take any steps to preserve the USOPC's rights pending resolution of this matter by the Court. Unfortunately, particularly in light of opposing counsel's confirmation that they have reviewed the USOPC's privileged materials at length during the year in which they have had them, it appears that the necessary next steps include disqualification of Plaintiff's counsel and imposition of dispositive sanctions against Moreau in accordance with *Xyngular v. Schenkler,* 890 F.3d 868 (10th Cir. 2018). The USOPC will file its motions requesting such relief in short order. However, Moreau's willful and bad faith taking of the USOPC's privileged property, and his counsel's complete failure to take any steps to properly address the potential privilege question upon receipt of such materials from Moreau, has necessitated the filing of the present request for immediate action. Said differently, Moreau's "failure to comply with the federal rules has placed privileged . . . information on the court's CM/ECF system, an internet system, and [is costing the USOPC] and the court time in and energy in sealing the aforementioned document[]."[1]   *Reed v. AMCO Ins. Co.,* No. 3:09-CV-0328-LRH-RAM, 2012 WL 846475, *3 (D. Nev. March 9, 2012) ("the underlying violation of filing documents containing confidential information . . . is sanctionable conduct").

Wherefore the USOPC respectfully requests that Plaintiff's Complaint be kept as a Level 1 restricted document pending resolution of the privilege questions implicated by its contents.

---

[1] The USOPC is entitled to recover the cost of these efforts.

Respectfully  submitted  July  7, 2020.

By:  _s/ Beth Ann Lennon_
       Beth Ann Lennon
       Raymond M. Deeny
       Sherman & Howard L.L.C.
       633 Seventeenth Street, Suite 3000
       Denver, Colorado  80202-3622
       Phone: 303.297.2900
       Fax: 303.298.0940
       blennon@shermanhoward.com
       rdeeny@shermanhoward.com

       _Attorneys for the USOPC_

## CERTIFICATE  OF SERVICE

I hereby certify  that on this 7th day of July, 2020 a true and correct copy of the foregoing **DEFENDANT'S  MOTION  FOR  INTERIM  RESTRICTION  OF  ACCESS  TO PLAINTIFF'S  COMPLAINT** was filed  with the Clerk of the Court using the CM/ECF system and served upon the following:

Darold W. Killmer, Esq.
Michael Fairhurst, Esq.
1543 Champa Street, Suite 400
Denver, CO 80202
Email: dkillmer@KLN-Law.com
Email: mfairhurst@KLN-Law.com

       _s/ Barbara McCall_
       Barbara McCall, Practice Assistant

Active/51974432.1