## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00350-PAB-MEH

DR. WILLIAM MOREAU

    Plaintiff,

v.

UNITED STATES OLYMPIC & PARALYMPIC COMMITTEE,

    Defendant.

## RESPONSE TO DEFENDANT'S MOTION FOR INTERIM RESTRICTION OF ACCESS TO PLAINTIFF'S COMPLAINT

Plaintiff, Dr. William Moreau, through his undersigned counsel, respectfully submits the following Response to Defendant's Motion for Interim Restriction of Access to Plaintiff's Complaint [Doc. 36, filed 7/7/20], and states as follows in support:

## ARGUMENT

It is beyond dispute that "[j]udicial records are presumptively open to the public." *Walton v. Gomez (In re Estate of Booker)*, 745 F.3d 405, 436 n.35 (10th Cir. 2014). This is especially true in the instant case, which demonstrates deep and wide violations of the law and public policy by the United States Olympic & Paralympic Committee, a uniquely public organization whose conduct squarely implicates serious public interest. To justify restricting access, a moving party must show "some significant interest that outweighs the presumption." *Id.* Defendant has failed to do so here for multiple reasons. USOPC's efforts to again shield its behavior from public scrutiny is consonant with its pattern, and its aggressive efforts to retaliate

1

against Plaintiff (and his counsel), especially in a case that is entirely based upon retaliation, cannot be countenanced by the Court.

I. **Defendant waived its purported privilege.**

As this Court observed on July 6, 2020: "Defendant filed the Complaint with its Notice of Removal on February 11, 2020 under no restriction[.]" [Doc. 33]. Thus, Plaintiff's Complaint is a matter of public record in federal court because the *Defendant* put it there. In other words, Defendant (not Plaintiff) "let the cat out of the bag" in federal court and should not be permitted to reverse course, months later, because it apparently belatedly regrets its decision.

More specifically, Defendant has waived its alleged privilege by intentionally choosing to put its purportedly privileged materials into the public sphere in federal court (and then keeping it there for many months). Even where litigants have *unintentionally* disclosed materials they later claimed to be privileged, "[i]dentification of protected material must occur in a timely fashion." *United States v. Ary*, 518 F.3d 775, 784 (10th Cir. 2008). "[T]he party asserting the work-product doctrine or attorney-client privilege must pursue all reasonable means to preserve the confidentiality of the material." *Id*. at 785.

Here, all of the allegations in the Complaint that Defendant claimed for the first time in July 2020 are privileged were also in the Complaint when Defendant filed the Complaint with its Notice of Removal under no restriction about five months ago in February 2020. *See Id*. at 785 (six-week delay waived privilege); *see also Dubrovin v. Ball Corp. Consolidated Welfare Benefit Plan*, No. 08-cv-00563-WYD-KMT, 2008 WL 11365181, at *5 (D. Co. 2008) (applying waiver doctrine based on delay in asserting privilege in civil context). While a five-month delay in asserting privilege would waive it, Defendant's delay actually was much longer. Defendant United States Olympic and Paralympic Committee (USOPC) was aware **by September 2019**

2

that Plaintiff intended to rely on the purportedly privileged assertions in paragraphs 60, 65-66, 68-72, 83-87, 89, 107-110, 112, 115, 124-126, 130, and 133-135 of the Complaint because his counsel fulsomely described them in a mediation statement *given to Defendant's counsel* that month, in advance of a mediation between the parties with Judge Boyd Boland of Judicial Arbiter Group, Inc. that occurred on September 30, 2019. Moreover, the USOPC noted in its Notice of Removal that it received a courtesy copy of the Complaint on January 12, 2020, nearly a month before it was filed in court. *See* Doc. 1, fn. 1.

Even relying on the principles articulated in cases based on unintentional disclosure gives Defendant too much leeway to reverse their past steps. What occurred here is instead an express waiver. "An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003). When there is an express waiver, "once documents have been turned over to another party voluntarily, the privilege is gone, and the litigant may not thereafter reassert it to block discovery of the information and related communications by his adversaries." *Id.*; *see also Ary*, 518 F.3d at 782 ("Where disclosure to a third party is voluntary, the privilege is waived.").

Thus, the Court can end its analysis of the privilege question – and Defendant's related request for restriction of public access to the Complaint right here – because there is nothing that is privileged or confidential in the Complaint.

**II.      The Court should not restrict access to the Complaint because it is a document used to determine Dr. Moreau's substantive legal rights and it addresses matters of paramount public importance.**

Courts have made clear that an even stronger presumption against restricted access applies when documents are used to determine litigants' substantive legal rights. *Colony Ins. Co.*

3

*v. Burke*, 698 F.3d 1222, 1242 (10th Cir. 2012). In such a case, "the parties must articulate a real and substantial interest that justifies depriving the public of access to the records that inform [the court's] decision-making process." *Id.* Here, the Complaint is currently the key document in the case that sets forth the basis for Plaintiff's legal claims against Defendant, based on Plaintiff's understanding of the facts at the time he filed it (the scope of the USOPC's illegal retaliation against Dr. Moreau has since become far more extensive).

Dr. Moreau's Complaint is a matter of particular public interest, as the core narrative of the case is based on Dr. Moreau advocating for matters of paramount importance that were rooted in firmly-established public polices – and the USOPC then firing him in retaliation for it.

At the threshold, the USOPC itself is a creature of federal law, chartered by the Ted Stevens Act of 1998, codified at 36 U.S.C. Sec. 220501, *et seq*. That Act charters and grants monopoly status to the United States Olympic Committee (now called the United States Olympic & Paralympic Committee) and specifies requirements for its member national governing bodies for individual sports. Its status as a federally chartered entity with its own governing laws and regulations subject to Congressional oversight renders it inherently an entity of public interest and acutely inappropriate for secrecy in its operations, especially in the context of illegal behavior.

More specifically, Dr. Moreau's advocacy at the USOPC addressed serious issues of ongoing public concern like the sexual abuse and exploitation of young female athletes who the USOPC had a duty to protect; USOPC staff's failure to create appropriate medical charts for patients, thereby putting athletes in significant danger; the USOPC's persistent failure to adequately treat athletes' severe mental health conditions (which led to a young woman dying by suicide); and USOPC sports science staff not following state-created standards of care regarding

4

the creation and protection of athletes' Protected Health Information. All of this – and additional consequential matters of public policy that Dr. Moreau pressed the USOPC to appropriately address – are described thoroughly in the Complaint that Defendant wishes now to shroud in total secrecy.

**III.** **Even assuming that Defendant could legitimately assert privilege at this point, none of the Paragraphs in the Complaint are privileged.**

Almost every paragraph that the USOPC claims to be privileged (Compl. ¶¶ 60, 65-66, 68-72, 83-87, 89, 107-110, 112, 115, 124-126, 130, and 133-135) merely describes or provides very basic context for Dr. Moreau's own internal efforts to bring the USOPC's conduct in line with public policy, which Dr. Moreau was required to plead in order to state a claim upon which relief can be granted. *See Id*. ¶¶ 65, 68-72, 83-87, 89, 107-110, 112, 115, 124-126, 130, and 133-135. In so doing, *Dr. Moreau* was giving *the USOPC* policy advice (he is not a lawyer), as opposed to *seeking* legal guidance from its general counsel, as is required for the privilege to attach. "Just because an email is copied to in-house counsel does not render the document subject to privilege." *Luv N' Care, Ltd. V. Williams Intellectual Property*, No. 18-mc-00212-WJM-KLM, 2019 WL 2471318, at *2 (D. Colo. 2019) (quoting *Pandeosingh v. Am. Med. Response, Inc.*, No. 14-cv-01792-PAB-KMT, 2014 WL 5488415, at *2. (D. Colo. Oct. 30, 2014)). Where a party does not show "that the emails were made for the *express* purpose of securing legal advice, the assertion of privilege [fails]." *Luv N' Care* at *2 (quoting *Pownell v. Credo Petroleum Corp.*, No. 09-cv-1540-WYD-KLM, 2011 WL 1045418, at *3-4 (D. Colo. Mar. 17, 2011)) (emphasis in original).

Now, admittedly, there is a sentence in the Complaint which quotes USOPC General Counsel Christopher McCleary, but it is plainly not revealing a privileged communication. In direct response to Dr. Moreau's whistleblowing, McCleary stated: "Now you have blown the

whistle and I must do something about it." Compl. ¶ 66. This reaction to Dr. Moreau's complaints of illegal behavior, rather than providing any protected legal advice, merely lays bare McCleary's retaliatory mindset. Another paragraph Defendant claims to be privileged only describes who participated in the decision to terminate Plaintiff. *Id*. ¶ 60. This too does not come remotely close to entering the realm of being privileged. Again, it is just a basic fact that is central to Plaintiff's legal claims, which is miles away from constituting legal guidance or a request for legal advice.

The current barrage of motions, seeking secrecy in these proceedings, leveling counterclaims against Dr. Moreau, and lobbing allegations of unethical conduct at Dr. Moreau and his lawyers, is consistent with USOPC's aggressive pattern of retaliation against anyone who dares to dissent or to criticize the Committee.[1] The bottom line is that the USOPC is doggedly determined to silence Dr. Moreau without legal justification, and to keep brushing its extremely serious mismanagement and malfeasance under the rug, as it has done time and time again. This Court should not enable Defendant to advance this improper aim that is in violation of public policy.

---

[1] USOC has previously engaged in retaliatory conduct against internal whistleblowers by firing them. *See*, for example, *Mark E. Shepherd, Sr. v. US Olympic Committee*, Civil Action No. 99-cv-2077-JLK (settled in 2008) and *Exum v. US Olympic Committee*, 209 F.R.D. 201 (D. Colo. 2002) (court denies USOC's effort to shroud evidence in secrecy in litigation brought by whistleblower doctor who had been retaliatorily fired for objecting to illegal practices. "The press asserts that the proposed protective order would impede its ability to gather the news by prohibiting members of the press from obtaining discovery materials from a party to this litigation. The press maintains that the alleged failure of defendant USOC to honestly and consistently enforce its stated anti-doping policies is a matter of significant public concern and controversy. The court finds that the press has satisfied the first two prongs of the standing inquiry by alleging an impediment to its ability to report the news that is traceable to the defendant's motion for protective order and proposed protective order." *Id*. at 204-205). USOC was represented by the same counsel in those cases as represents it now. *See also* "Settlement Reached in USOC Lawsuit," *Colorado Springs Gazette Telegraph*, Sept. 6, 1991, p. 27 (settlement in case involving lawyer in USOC General Counsel office in whistleblower lawsuit).

The truth is that Defendant and its counsel are engaged in nothing more than scorched earth litigation tactics. As explained in Plaintiff's response to Defendant's Motion to Modify the Scheduling Order, this is not the first time Defendant's counsel has engaged in such retaliatory and abusive conduct against a civil rights plaintiff and counsel in cases not even involving USOC. *See* Doc. 26; *BKP, Inc., et al. v. Killmer, Lane & Newman, LLP, et al.*, 2019-cv-31940) (Denver District Court) (dismissing Mr. Deeny's lawsuit against Ms. Miles' counsel in its entirety, and awarding Killmer, Lane & Newman and Towards Justice its attorneys' fees and costs of over $170,000). It is instead part of a pattern of retaliation that appears to be the *modus operandi* of both the USOPC and its counsel in this case.  Unless curbed, USOC will try to continue to retaliate, and do so outside of public scrutiny.

**IV.** **Plaintiff's purportedly privileged paragraphs in the Complaint are reasonably necessary to prove his claims and should remain in a complaint that is accessible to the public.**

Defendant's motion to strike – and related motion to restrict – are also fatally flawed because they are rooted in an improper and illegal purpose: to retaliate against Dr. Moreau, constituting an abuse of process. Defendant alleges that Dr. Moreau has done something nefarious by supporting his claims in the complaint with a description of his protected opposition to the USOPC's misconduct that included the USOPC's counsel. However, the premise of Defendant's motion to strike (and related motion to restrict) does not withstand scrutiny. It simply cannot be the case that a whistleblower plaintiff's own whistleblowing, when that whistleblowing happened to be addressed at times to general counsel of an ex-employer, cannot be included in a complaint (or used as evidence) because of purported privilege. Otherwise, how could such a whistleblower even begin to articulate a factual basis for retaliation, or provide even a basic narrative of the basis for their case?

Even where the whistleblower is former general counsel for a company and the material at issue is actually privileged and confidential (unlike here), courts have held that the plaintiff may rely on such materials as part of their case. *See Wadler v. Bio-Rad Labs*, 212 F. Supp. 3d 829, 848 (N.D. Ca. 2016). ("[T]he cases that have been decided support the conclusion that Wadler's retaliation claim may go forward despite confidentiality concerns and that he may rely on privileged and confidential communications that he reasonably believes are necessary to prove his claims and defenses."); *see also id*. at 846-49 (collecting cases). While *Wadler* focused on federal common law, its reasoning readily applies to Colorado common law as well because the fundamental basis for its holding was that the public policy of allowing whistleblowers subject to retaliation to vindicate their rights in court is of greater importance than attorney client privilege in some circumstances. The Colorado Supreme Court long ago recognized the public significance of the issues underlying Dr. Moreau's case by fashioning a remedy for whistleblowers like Dr. Moreau who employers retaliatorily and illegal fire. *See Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 109 (Colo. 1992); *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 667 n.2 (Colo. 1999); *see also* American Bar Association Model Rules of Professional Conduct, Rule 1.6(b)(5) ("A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary … to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client."), available at: https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_1_6_confidentiality_of_information/.[2]

---

[2] If a lawyer can use such internal company documents to establish her own claim, then surely a plaintiff like Dr. Moreau (who is not a lawyer and who did not represent the USOPC) can do so in a wrongful discharge in violation of public policy case. Indeed, USOPC provides no authority that Dr. Moreau is prohibited from disclosing evidence of internal malfeasance just because the company's lawyer was aware of the wrongdoing.

Finally, for the reasons discussed above, none of the paragraphs in the Complaint should be shielded from the public. This is a case of great public importance that involves serious health and safety issues of enduring public concern.

## V.     **Defendant fails to explain why no alternative to complete restriction is practicable.**

To the extent that Defendant asserts confidentiality concerns, Defendant fails to explain how redaction, or any other form of remedial measure, short of a complete shroud of secrecy, would be incapable of protecting those interests. Instead, Defendant asserts without substantiation that complete restriction of public access to the Complaint is the only acceptable remedy, while also acknowledging that only a very limited number of paragraphs in the 164-paragraph Complaint are concerned, in Defendant's view (obviously, Plaintiff vigorously disagrees with that assertion). This position cannot be reconciled with the requirement of D.C.COLO.LCivR 7.2(c)(4), as it does not "explain why no alternative to restriction is practicable or why only restriction will adequately protect the interest in question."

WHEREFORE, Plaintiff respectfully requests that the Court deny Defendant's motion to restrict.

Respectfully submitted this 9th day of July 2020.

KILLMER, LANE & NEWMAN, LLP

*s/ Darold W. Killmer*

Darold W. Killmer
Michael Fairhurst
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
(303) 571-1001 fax
dkillmer@kln-law.com
mfairhurst@kln-law.com

ATTORNEYS FOR PLAINTIFF

9

**CERTIFICATE OF SERVICE**

I hereby certify that on July 9, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Raymond M. Deeny
SHERMAN & HOWARD
90 South Cascade Avenue, Suite 1500
Colorado Springs, Colorado 80903
Direct: (719) 448-4016
rdeeny@shermanhoward.com

Beth Ann Lennon
SHERMAN & HOWARD
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Phone: 303.297.2900
Fax: 303.298.0940
blennon@shermanhoward.com

*Counsel for Defendant*

                                                          KILLMER, LANE & NEWMAN, LLP

                                                          *s/ Jesse Askeland*
                                                          _____
                                                          Jesse Askeland