IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:20-cv-00350-PAB-MEH

DR. WILLIAM MOREAU,

       Plaintiff,

v.

UNITED STATES OLYMPIC & PARALYMPIC COMMITTEE,

       Defendant.

---

### DEFENDANT'S MOTION TO DISQUALIFY KILLMER, LANE & NEWMAN, LLP

---

Defendant United States Olympic & Paralympic Committee ("Defendant" or "USOPC"), by and through its undersigned counsel, respectfully requests that its privileges and the integrity of these proceedings be protected through the disqualification of Plaintiff's counsel. While the USOPC does not lightly make this request, opposing counsel's blatant disregard for the attorney/client privilege and its importance to the integrity of the judicial process has left it with no other choice.

When an employee misappropriates an employer's confidential and proprietary information, it is well established that litigation "for the purposes of protecting its valuable confidential and proprietary information" becomes necessary. *Bermel v. BlueRadio, Inc.,* 440 P.3d 1150 (Colo. 2019). Such efforts are not "retaliation." *Sparks v. Duncan Race Cars, Inc.,* No. 14-cv-00447-PAB-KLM, 2014 WL 7403382 (D. Colo. Dec 26, 2014) (an employer's decision to bring counterclaims when discovery uncovers misconduct by a former employee is not "retaliation").

Even under ordinary circumstances, there is no "legal justification" for an employee

"taking the proprietary and confidential information" of his employer "by forwarding it to his personal email account . . . even if for the purpose of preserving such [materials] for potential litigation." *Bermel v. Blueradios, Inc.,* No. 2014CV032139, 2015 WL 10012672, *3 (Dist. Colo. Dec. 7, 2015). Similarly, an attorney's attempt to unilaterally "be the ultimate gatekeeper . . . of [the other side's] claims of confidentiality and privilege" cannot be countenanced in our judicial system.[1]  *Raymond v. Spirit AeroSystems Holdings, Inc.,* No. 16-1282-JTM-GEB, 2017 WL 2831485, *16 (D. Kan. June 30, 2018). Unfortunately, only disqualification will remove the taint from these proceedings arising from Plaintiff's counsel's conduct.

### I.     Certificate of Conferral Pursuant to D.C.Colo.LCivR 7.1.

Counsel for Defendant has conferred with counsel for Plaintiff about the relief requested in this Motion. Plaintiff's counsel opposes the relief requested herein.

### II.     Legal Standard

Whether disqualification is a necessary remedy to an attorney "obtaining information in violation of the legal rights of an opposing party" is a question that "turn[s] on a host of . . . considerations, including the flagrancy of the attorney's conduct; the sensitivity of the information and the relevance to the particular proceedings; and the prejudice to be suffered" by each party depending on the Court's ruling. *In re Estate of Meyers,* 130 P.3d 1023, 1027 (Colo. 2006) (citing *In re Meador,* 968 S.W.2d 346, 352 (Tex. 1998) "a lawyer who uses privileged information improperly obtained from an opponent potentially subverts the litigation process"). "The critical

---

[1] This unlawful conduct is made worse here by Plaintiff Moreau's, and his counsel's, decision to misappropriate and misrepresent the USOPC's privileged information for the purposes of personal publicity and extortion at the expense of not only the rights of the USOPC but the privacy interests of third parties those confidentiality obligations and privileges are intended to protect.  Indeed, here it is not only the integrity of USOPC's mission that is implicated by Moreau's unlawful conduct, and his counsel's use of privileged information in the present proceedings, but also the privacy rights of U.S. athletes and their families.

51986131.1

question that dictates whether disqualification is necessary is whether the litigation can be conducted in fairness to all parties" absent disqualification. *Liebnow v. Boston Enterprise Inc.,* 296 P.3d 108, 116 (Colo. 2013) (when counsel for a party "learns confidential information" belonging to the adverse party "knowledge of the information creates a significant risk" that the counsel will need to be disqualified in order to preserve the integrity of the judicial process); *accord Persichette v. Owners Ins. Co.,* 462 P.3d 581, 592 (Colo. 2020) (disqualification was necessary because allowing counsel to continue to represent a party while in possession of confidential information belonging to the other side "would seriously threaten the integrity and fairness of the proceedings, and because there is no effective remedy outside of disqualification" under such circumstances).  While the Court has discretion to determine whether disqualification is appropriate, "[i]n determining when to exercise its discretion to disqualify counsel in those cases involving the loss of the protection of privilege, the Court should resolve any doubts in favor of disqualification."  *Richards v. Jain,* 168 F.Supp.2d 1195, 1209 (W.D. Wash. 2001).

This is because "district courts have an obligation to take measures against unethical conduct occurring in any proceeding" including conduct that obstructs the privilege rights of another party. *Sequa Corp. v. Lititech Inc.,* 807 F.Supp. 653, 659 (D. Colo. 1992) ("disqualification may be proper even if there is no actual violation of a disciplinary rule" when "public confidence in the legal system" would be undermined by permitting an attorney to continue his participation in the proceedings).  "Though the Tenth Circuit recognizes that federal district courts usually adopt the Rules of Professional Conduct of the states in which they are situated, it has consistently found that motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, and thus are decided by applying standards developed under federal law." *Helmer v. Goodyear Tire & Rubber Co.,* No. 12-cv-00685-RBJ-MEH, 2012 WL 6953341, *2 (D.

3

Colo. Aug. 31, 2012). Thus, "the ABA Model Rules of Professional Conduct . . . reflect the national standard to be used in ruling on disqualification motions." *Cole v. Ruidoso Mun. Sch.,* 43 F.3d 1373, 1383 (10th Cir. 1994) (former employee has no rights to the information she communicated to the company's "law firm on behalf of" former employer as "it is the [company] which, as the client, holds the right to have those communications protected and which may decide whether and to whom that information may be disclosed").

"When ruling on a motion for disqualification of counsel, the Court must make specific findings and conclusions." *Jaeger v. HSBC Bank USA, N.A.,* No. 12-cv-01736-REB-KLM, 2013 WL 1704298, *2 (D. Colo. April 19, 2013) (internal citations and quotations omitted). Where there are any questions of fact to be determined before the Court can rule, "the law requires the Court to hold an evidentiary hearing prior to ruling on the Motion." *Id*. at *3; *but see O'Hanlon v. AccessUS Mobile Solutions, LLC,* No. 18-cv-00185-RBJ-NYW, 2018 WL 3586395, *3 (D. Colo. July 26, 2018) (while "courts must make specific findings of facts and conclusions of law when considering. . . the appropriateness of disqualification. . . [when] the record is sufficient for making such a determination, no evidentiary hearing is required").

### III.   Disqualification of KLN is necessary to preserve the USOPC's privilege and the integrity of the judicial process.

Plaintiff's counsel at Killmer, Lane, & Newman, LLP ("KLN") received information and documents from Moreau in May of 2019 that should not be in their possession and cannot be used in this lawsuit because they are undisputedly privileged. *See, e.g.,* Ex. A (containing clearly privileged materials Plaintiff has produced in discovery in this lawsuit, filed under Level 1 restricted access). On May 13, 2019, Moreau's employment with the USOPC ended. Unbeknownst to the USOPC, Moreau had been secretly taking the USOPC's privileged documents and information during the last several years of his employment. *See, e.g.,* Doc. 35 at 314:13-16.

Within days of his termination, Moreau retained KLN to demand additional severance. Evidently, Moreau gave the materials he had taken from the USOPC to KLN at that time.

In the summer of 2019, KLN made several demands and threats to file suit but never disclosed that they had in their possession privileged and confidential materials that Moreau had taken from the USOPC.[2] The extent of counsel's reference to these materials in the summer of 2019 were vague, and inaccurate, references to alleged conversations Moreau claimed to have had with in-house counsel while employed at the USOPC, which came up again during the parties' September 30, 2019, mediation conference before Judge Boyd Boland. There was no specific mention of the fact that KLN had in their possession hundreds of pages of misappropriated USOPC property, including dozens of pages of materials subject to the attorney/client privilege.[3] While challenging the accuracy and relevance of Moreau's allegations, the USOPC and its counsel also

---

[2] KLN's demands on behalf of Moreau in 2019 are being provided herewith, under seal, as Exhibit B, and are offered for the purpose of "negating a contention of undue delay." *Genova v. Longs Peak Emergency Physicians, PC,* 72 P.3d 454, 464 (Colo. Ct App. 2003) (discussing CRE 408). Specifically, these settlement communications are being provided to afford the Court the necessary context to understand the timing of the present motion and the lack of affirmative action on the part of Plaintiff and his counsel to bring this matter to the USOPC's, or the Court's, attention.

[3] Counsel provided a settlement statement and "exhibits" in late September 2019, just before Judge Boland's settlement conference. Plaintiff's "exhibits" were provided in a single 174 page PDF, which largely contained inadmissible and irrelevant materials highlighting the potential media coverage Moreau believed he could get if the USOPC declined to give into his demands. These "exhibits" are being provided herewith, under seal, as Exhibit C. After conferring with counsel in June 2020, the USOPC confirmed that there were three emails between Moreau and the USOPC's legal counsel interspersed within these "exhibits." These were not specifically brought to the USOPC's attention in September 2019 or identified by the USOPC and its counsel at that time and, thus, were not addressed at that time. These "exhibits" were not being presented as admissible evidence that would be used at trial – indeed the majority of the 174 pages provided are clearly and unequivocally NOT admissible, have not been provided in discovery during the present litigation, and have nothing to do with Moreau's employment at, or termination from, the USOPC. *See also* Fed. R. Civ. P. 408.

emphasized with the mediator that conversations with in-house counsel discussing corporate legal issues were not competent evidence, as they were privileged.

When the USOPC did not acquiesce to Moreau's mediation demands, KLN filed a Complaint on behalf of Moreau on February 5, 2020.  [Doc. 1-2].  Prior to filing the Complaint, neither Plaintiff nor his counsel made any inquiry with Defendant, its counsel, or the Court concerning the propriety of their intended filing or whether there were any privilege or confidentiality objections to the materials being filed.  Rather, KLN made the unilateral decision to incorporate information pulled – out of context and often inaccurately – from the USOPC's privileged documents into the Complaint.

When Defendant filed its Answer on April 9, 2020, every time there appeared to be even a suggestion that Moreau was improperly seeking to waive the USOPC's privilege, the USOPC objected and specifically requested that each of these allegations be stricken from the Complaint. Even after receiving the USOPC's Answer - clearly, unequivocally, and repeatedly asserting and preserving the USOPC's attorney/client privilege – KLN did not disclose that they had in their possession voluminous materials Moreau took from the USOPC, including materials which are facially privileged.  Similarly, during the first week of May 2020, after having reviewed Moreau's initial disclosures and hearing, for the first time, from several USOPC employees of Moreau's misappropriation of USOPC property, Defendant specifically raised concerns with KLN regarding the propriety of Moreau having USOPC property in his possession.  KLN again declined to address the fact that there were additional, undisclosed, materials in their possession – including materials that were facially privileged.

Cross referencing the allegations in the Complaint with the misappropriated documents Moreau has produced in discovery in April and May 2020 also brought to light that additional

6

allegations in the Complaint, not originally identified by the USOPC as privileged due to the context in which they were being presented in the Complaint and the inaccuracy of the information being provided, contain references to or quotations from privileged materials.  Doc. 28-2.

Upon receipt of the USOPC's potentially privileged materials more than a year ago, KLN took no steps to preserve the USOPC's privilege.  They did not disclose the fact that these documents were in their possession to the USOPC or the Court until they were actively attempting to use them against the USOPC. They did not segregate them from the other materials in their possession or otherwise decline to review them while they brought the issue to the Court for resolution.  They did not return them to the USOPC or destroy them.  Rather, they reviewed them, presumably repeatedly and at length, and decided to attempt use them against the USOPC in this lawsuit.  Despite requests for the return of these materials, they still remain in KLN's possession.

KLN has now confirmed on at least five separate instances their intention to use the USOPC's privileged materials against the USOPC in the present lawsuit, including during Moreau's June 19, 2020 deposition, during which the misappropriation – and intended use – of the USOPC's privileged materials in this litigation was confirmed by both Moreau and KLN.  Even Plaintiff's most recent filing with this Court, which was NOT made under seal, demonstrates a flagrant disregard for the USOPC's privilege rights and the Court's role in resolving any question concerning the existence of a privilege – containing unnecessary alleged information from communciation Moreau is supposed to have had with the USOPC's counsel while employed by the USOPC.  Doc. 38.  Because of this conduct, KLN's continued representation of Plaintiff in this lawsuit threatens the integrity of the entire judicial process.   They must be disqualified.

### A.   KLN has in their possession voluminous materials protected from disclosure or use by the USOPC's attorney/client privilege.

There can be no real dispute that the materials KLN took it upon themselves to use are

subject to and protected under the USOPC's attorney/client privilege.  *See, e.g.,* Ex. A. This privilege is one of the bedrocks of the judicial system.  Indeed, "the importance of a trusting and open attorney-client relationship" has resulted in "the development of a body of substantive law and ethical rules that have evolved over the years with the purpose of fostering such a relationship." *US v. Colo. Sup Ct*., 189 F.3d 1281, 1286-87 (10th Cir.1999) (internal citations and quotations omitted) ("The importance of the attorney-client relationship is evidenced by the various privileges which protect it . . . the legal profession's ethical obligation of confidentiality is a corollary to these privileges"); *accord U.S. v. Zolin,* 491 U.S. 554, 562 (1989) ("recognize[ing] the attorney-client privilege under federal law, as the oldest of the privileges for confidential communications known to the common law").  The attorney/client privilege exists "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981); *accord Law Offices of Bernard D. Morley, PC v. MacFarlane,* 647 P.2d 1215, 1221 (Colo. 1982) (Colorado's attorney/client privilege is "rooted in the principle that candid and open discussion by the client to the attorney without fear of disclosure will promote the orderly administration of justice").

The attorney/client privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor."  *Matter of Grand Jury Subpoena Duces Tecum,* 697 F.2d 277, 278 (10th Cir. 1983) (internal citations and quotations omitted).  Any "communication made by the client to [an attorney] or [the attorney's] advice given thereon in the course of professional employment" may not be used or disclosed by anyone other than the holder of that privilege.  *Genova,* 72 P.3d at 464 (citing C.R.S. § 13-90-107(1)(b)).  Just as with an individual client, a "corporation is entitled to

8

refuse to disclose confidential communications protected by the attorney-client privilege and it may prevent its attorneys or employees from disclosing such communications." *Sims v. Roux Labs., Inc.,* No. 06-10454, 2007 WL 2571941, *1 (E.D. La. Aug. 31, 2007) (citing *Nguyen v. Excel Corp.,* 197 F.3d 200, 206 (5th Cir. 1999)). Under this privilege, "communications between corporate counsel and company personnel are privileged so long as they concern matters within the scope of the employees' corporate duties." *Genova,* 72 P.3d at 462 (where "the record indicates that all the client information shared and advice given were related solely to the business of the corporate client" the privilege belongs to the corporation). This privilege cannot be waived by a former employee who has "expressed [his] intent . . . to vitiate the privilege and release the documents to a public forum, notwithstanding his fiduciary duty as a former" employee. *Id.*

Moreau was employed by the USOPC as the head of its Sports Medicine department for nearly ten years. His job was to coordinate and oversee the USOPC's health care and medical services programs provided for U.S. athletes, which required regular coordination with the USOPC's in-house legal team to obtain legal advice concerning USOPC matters. Moreau was trained that his communications with in-house counsel in which legal advice was sought or provided were privileged and about his obligation to maintain the confidentiality of those communications. As recited in the USOPC's First Amended Answer and Counterclaims, Doc. 28-1, Moreau was also instructed on his obligation not to retain copies of privileged materials if his employment ended and not to disclose such materials to anyone who had no need to know that information, even within the USOPC.

The materials Moreau took – and that KLN seeks to use in the present lawsuit – are the exact type of documents and information that the privilege (and Moreau's training) is designed to protect. They undisputedly contain communication in which USOPC personnel are asking

USOPC counsel to "provide direction" and "legal approval" concerning USOPC matters or for "a legal interpretation" concerning laws implicated by USOPC business. Ex. A. Many of these materials were clearly marked "privileged and confidential" on their face. In fact, these materials include email exchanges with at least three separate USOPC attorneys, who KLN *knew* were attorneys, concerning legal advice being sought or provided on behalf of the USOPC. These materials fall squarely within the purview of the attorney/client privilege and never should have been reviewed by KLN.

> **B. KLN has had the USOPC's privileged materials in their possession for over a year without ever taking any steps to preserve or protect the privilege pending resolution of any question concerning its applicability by the Court.**

KLN must be disqualified because they have improperly reviewed and attempted to use the USOPC's privileged information.  In determining whether disqualification is necessary due to an attorney's knowledge or conduct, the "District of Colorado applies the rules of professional conduct, as adopted by the Colorado Supreme Court, as the standards of professional responsibility applicable here."  *World Youth Day, Inc. v. Famous Artists Merchandising Exchange, Inc.,* 866 F.Supp. 1297, 1301 (D. Colo. 1994).  However, the rules of professional conduct do not end the Court's inquiry, just as "the black-letter rules must not end [an attorney's] inquiry into ethical standards of attorney conduct" when he comes into possession of potentially confidential and/or privileged materials.  *Raymond,* 2017 WL 2831485.  Indeed, even if a specific rule has not been violated, disqualification is necessary if "the litigation can[not] be conducted in fairness to all parties" without disqualification because counsel's continued participation "in some way 'taints' the trial or the legal system." *World Youth Day,* 866 F.Supp. at 1301 (disqualifying counsel because his continued involvement at trial "taints the legal system") *accord Federal Deposit Ins. Corp v. Isham,* 782 F.Supp. 524, 528 (D. Colo. 1992). (same).  Disqualification is necessary here

because KLN's willful failure to take appropriate action upon receipt of the USOPC's misappropriated privileged materials means their continued involvement in this case would taint the proceedings and prevent the USOPC from obtaining a fair trial.

In reviewing whether disqualification is necessary under the present circumstances, the focus of the Court must be "on conduct of counsel after receiving the [potentially privileged] information." *Raymond,* 2017 WL 2831485, \*14.  To ensure "[p]reliminary questions concerning . . . the existence of a privilege . . . [can] be determined by the court," Fed. R. Evid. 104(a), there is an affirmative obligation on counsel to preserve any potential privilege claim pending resolution of disputes concerning that privilege by the Court. *See, e.g.,* Fed. R. Civ. P. 26(b)(5)(B) (a party "must not use or disclose [potentially privileged] information until the claim [of privilege] is resolved").

As explained in the commentary to Rule 26, the appropriate procedure is for the "party that received the [potentially privileged] information to present the matter to the court for resolution."

> An attorney who receives privileged documents has an ethical duty upon notice of the privileged nature of the documents to cease review of the documents, notify the privilege holder, and return the documents. A failure by an attorney to abide by these rules is grounds for disqualification. . . . Once an attorney knew of the possession of the privileged documents he had an affirmative duty not to review [their contents] . . . and to return [them to their rightful owner].

*Richards,* 168 F.Supp.2d at 1200-1201 (internal citations omitted) (counsel's "suggestion . . . than an attorney in possession of attorney-client documents has no obligation except to give copies back or otherwise disclose the possession of the documents shocks the conscience of this Court"); *accord Raymond,* 2017 WL 2831485, \*15 ("The best practice would have been to notify opposing counsel immediately, and seek outside counsel or an escrow agent, of sorts, to maintain the documents until the Court was able to examine the issue").  At a minimum, then, KLN had an "ethical duty to seek a ruling from the Court about the privileged documents" ***before*** using or

51986131.1

reviewing them. *U.S. ex rel. Frazier v. IASIS Healthcare Corp.,* No. 2:05-cv-766-RCJ, 2012 WL

130332 (D. Ariz. Jan. 10, 2012) (disqualifying counsel "from assisting or representing [the

plaintiff] or any other party adverse to" the defendant because of counsel's actions upon receipt of

the defendant's privileged materials even though "the Court has not made a finding of bad faith

against" the counsel).   KLN took none of these steps. Instead, they provided "notice" of their

possession of the USOPC's property by improperly "utilizing the alleged proprietary information"

against the USOPC.  *Id.* at *16.

> ### C.  KLN has not met the ethical standards required of attorneys practicing in federal court.

"While professionalism should be inherent in all aspects of litigation" and "sanctionable

litigation conduct does not mandate an ethical finding . . . courts recognize the importance of

ethical standards to maintain the integrity of, and public confidence in, the legal profession."

*Raymond,* 2017 WL 2831485.   KLN's conduct here implicates at least a half dozen ethical rules,

including Colo. RPC 4.4(a) and ABA Model Rules of Prof'l Conduct R. 1.6(b)(3), 1.15(d) and/or

(e), 3.4(c), 4.4(a), and 8.4(c) & (d).   *Cole,* 43 F.3d at 1383 (both Colo. ethics rules and "ethical

rules announced by the national profession" outline obligations of counsel in federal court).

For example, "[i]n several cases, courts have found that Rule 4.4(b) or its underlying

principle requires disclosure . . . when confidential documents are sent intentionally and without

permission." ABA Formal Op. 11-460; *accord Raymond,* 2017 WL 2831485, *14 (finding it

"nonsensical to apply a separate and lesser standard to intentionally-disclosed documents [than

inadvertently disclosed materials].   In fact, given the documents' dubious origins, protections

applied to Defendants' proprietary or privileged-marked information should be at least equal, if

not heightened, when the disclosure is clearly unauthorized").

> [Indeed, a] lawyer is prohibited from reading or using [an opposing party's privileged] e-mails by any of several other rules [as well]. These include Rule 4.4(a), which requires lawyers to refrain from using "methods of obtaining evidence that violate [a third person's] legal rights," and which, according to the accompanying comment, forbids "unwarranted intrusions into privileged relationships, such as the client-lawyer relationship." These also include Rule 8.4(c), which forbids "conduct involving dishonesty, fraud, deceit or misrepresentation," and Rule 8.4(d), which forbids "conduct that is prejudicial to the administration of justice."

*Id.* at n. 6.

> [Similarly,] Rule 1.15(d) imposes a notification duty in the analogous situation in which a lawyer comes into possession of physical documents that appear to have been wrongly procured from another party. . . Rule 1.15(d) provides, in pertinent part: "upon receiving . . . property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person."

*Id.* at n.9.

Even if the Court were to hold that these "rules are inapplicable," this "is not to say that courts cannot or should not impose a disclosure obligation in this context pursuant to their supervisory or other authority. . . " *Id.* ("Even when there is no clear notification obligation, it often will be in the [receiving attorney's] best interest to give notice and obtain a judicial ruling as to the admissibility of the employee's attorney-client communications before attempting to use them and, if possible, before the [attorney] reviews them."). Indeed, the "inherent powers of the Court are not governed by any specific rule or statute, but are necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases . . . [and] it is well within this Court's power to expect a level of professionalism and ultimate fairness from counsel appearing" before it. *Raymond,* 2017 WL 2831485, *13

> [I]nstead of 'lying in wait' with the documents . . . obligations of decency, fundamental fairness, and frankly the golden rule, should have prompted counsel to notify Defendants in order to avoid problems later. The ethical rules make clear the rules themselves should not end counsel's inquiry, and simply because the rules may not specifically address the situation before counsel does not mean counsel

13

should throw up their hands and conclude that nothing can or should be done to protect or ameliorate the document owner's privilege and confidentiality interests.

*Id.* at *14 (internal citations omitted).

KLN could have taken any number of steps to ["eliminate] any appearance of wrongdoing" which "would mostly [sic] likely have preserved the documents' use in later discovery and avoided sanctionable conduct." *Id.* at *15. Instead, they elected to "sidestep[] the orderly discovery process," which "inappropriately permitted Plaintiffs' counsel to be the ultimate gatekeeper . . . of Defendant's claims of confidentiality and privilege. It was not Plaintiff's prerogative to unilaterally determine whether the information received . . . was truly proprietary, confidential, privileged, or some combination of those labels, and use the information it deemed appropriate." *Id.*

### D. Nothing less than disqualification can cure this taint.

While the USOPC and undersigned counsel do not lightly request disqualification, KLN's actions in the present case have made disqualification necessary here. A motion requesting disqualification of counsel requires that the Court "balance competing interests, weighing the need to maintain the highest standards of the profession against a client's right to choose his counsel." *Sanchez v. Maquet Getinge Grp.,* No. A-4994-15T4, 2018 WL 2324579, *8 (N.J Supper Ct. App. Div. May 23, 2018). Unfortunately, "a party's possession of its opponent's privileged material" almost always requires disqualification because "less severe remedies such as assessments of expenses or counsel fees fail to adequately address both the [ethical violation] and the attendant harm of access and exposure to privileged documents." *Id.*

"The rules governing the management of civil disputes are carefully supervised by the judiciary to prevent the discovery process from degenerating into a chaotic self-help battle that ultimately undermines the confidentiality of privileged communications." *Id.* at *7. However, where, as here, a party's "extra-judicial self-help measures deprived [the other side] of the

14

opportunity to prevent the disclosure of [its] privileged information" and "counsel's unreasonable delay in disclosing this information rendered futile any attempt to mitigate this harm" disqualification becomes necessary and appropriate.[4] *Id.*

**IV.**      **Conclusion**

"The rules on privilege apply to all stages of a case or proceeding." Fed. R. Evid. 1101(c). Thus, while the USOPC would have been better served if this issue had been brought to its attention so it could be presented to the Court months ago, the problem created by KLN's review and use of the USOPC's privileged information remains a live issue.[5]   Preservation of the USOPC's privilege requires disqualification of Plaintiff's counsel, as they have undisputedly reviewed and sought to rely upon clearly privileged materials misappropriated by their client and provided to them more than a year ago.  Wherefore Defendant respectfully requests that KLN be disqualified from acting as counsel in these proceedings and be ordered to return all USOPC property wrongfully in their possession.

Respectfully submitted July 10, 2020.

By: *s/ Beth Ann Lennon*
Beth Ann Lennon
Raymond M. Deeny
Sherman & Howard L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado  80202-3622
Phone: 303.297.2900/Fax: 303.298.0940
blennon@shermanhoward.com

---

[4] Moreover, Plaintiff is not in a position to cry foul because he "will be deprived of the counsel of [his] choice . . . [as] plaintiff [is] directly responsible for the breach of privilege, and thus, the deprivation of counsel of choice."  *Richards,* 168 F.Supp.2d at 1208.  Similarly, where, as here, "the discovery deadline is still more than three months away, as is the dispositive motions deadline," "there is nothing to suggest that other counsel could not be found to represent Plaintiffs."  *Id.*

[5] Similarly, a refusal to address this situation due to the timing of the present motion does nothing but reward KLN and Moreau for their failure to take the affirmative steps necessary to bring this issue to the Court's attention long ago.

rdeeny@shermanhoward.com

*Attorneys for the USOPC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of July, 2020 a true and correct copy of the foregoing **DEFENDANT'S MOTION TO DISQUALIFY KILLMER, LANE & NEWMAN, LLP** was filed with the Clerk of the Court using the CM/ECF system and served upon the following:

Darold W. Killmer, Esq.
Michael Fairhurst, Esq.
1543 Champa Street, Suite 400
Denver, CO  80202
Email: dkillmer@KLN-Law.com
Email: mfairhurst@KLN-Law.com

*s/ Mary Navrides*
Mary Navrides, Practice Assistant

51986131.1