IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:20-cv-00350-CNS-MEH

DR. WILLIAM MOREAU,

     Plaintiff,

v.

UNITED STATES OLYMPIC & PARALYMPIC COMMITTEE,

     Defendant.

---

## ORDER

---

Before the Court is Plaintiff Dr. William Moreau's Special Motion to Dismiss Defendant United States Olympic & Paralympic Committee's ("USOPC's") Counterclaims Pursuant to C.R.S. § 13-20-1101 (ECF No. 171), and USOPC's Motion to Dismiss Dr. Moreau's First Amended Complaint (ECF No. 170). For the following reasons, the Court DENIES both motions.

## I. BACKGROUND FOR DR. MOREAU'S MOTION TO DISMISS[1]

USOPC serves as both the National Olympic Committee and National Paralympic Committee for the United States (ECF No. 66 at 44-45 ¶ 5). Dr. Moreau worked for USOPC from May 2009 through May 2019 (*Id.* at 45 ¶ 6). From December 2009 through May 2019, Dr. Moreau led USOPC's Sports Medicine Department and was responsible for "building an integrated multi-disciplinary approach to healthcare" for U.S. athletes (*Id.* at 45 ¶ 7). Dr. Moreau was the Vice

---

[1] The background facts are taken from the well-pleaded allegations in USOPC's Counterclaims, drawn from its First Amended Answer to Complaint and Counterclaims, and interpreted in light most favorable to USOPC (*See* ECF No. 66). *See also Porter v. Ford Motor Co.*, 917 F.3d 1246, 1248 n.1 (10th Cir. 2019); *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).

President of Sports Medicine from 2019 through May 2019 (*Id.* at 46 ¶ 9). During his tenure at USOPC, Dr. Moreau had access to "confidential and proprietary" information belonging to USOPC (*Id.* at 45 ¶ 8). This information concerned USOPC's policies, contractual terms of service for U.S. athletes, information regarding the athletes themselves, "HR and personnel matters," and "legal actions" (*Id.* at 45-46, 56-57 ¶¶ 8, 72-73).

As a USOPC employee, Dr. Moreau was given a work email account (*Id.* at 46 ¶ 12). He acknowledged throughout his employment that he was bound by the terms of USOPC's Employee Handbook, its Code of Conduct and its "Confidentiality & No Prohibited Contact Statement" (*Id.* at 46, 48 ¶¶ 13-14, 25). At the time he was hired, USOPC also provided Dr. Moreau with its "Property Issue/Return Policy," which stated that when his employment ended, he was required to return all USOPC property to USOPC (*Id.* at 48 ¶ 23). USOPC also implemented a "Document Management Policy" that required employees to maintain any company emails and documents in a policy-approved storage location (*See id.* at 51 ¶ 44). Dr. Moreau was told several times during his employment that he was prohibited from disclosing confidential information to "unauthorized persons," and that he was bound by this requirement even after his employment with USOPC ended (*See, e.g.*, *id.* at 66 ¶¶ 52-55).

During his employment, Dr. Moreau sent or forwarded emails from his USOPC email account to an email account associated with his "side business," DCOnline (*Id.* at 56 ¶ 70). He also printed confidential emails and documents (*Id.* at 56 ¶ 71). Some of these documents and emails contained alleged USOPC "trade secrets" (*See id.* at 57 ¶ 73). When Dr. Moreau's employment ended in May 2019, he did not return any of the printed documents or emails forwarded to his DCOnline account, and still has some of these documents in his possession (*See id.* at 58 ¶¶ 77, 79). Dr. Moreau deleted or destroyed other emails and documents (*Id.* at 58 ¶ 80).

After taking these emails and documents, Dr. Moreau shared them with "third parties" (*Id.* at 59 ¶ 86).  In February 2020, Dr. Moreau sued USOPC, and included "extensive confidential and proprietary information" belonging to USOPC in his initial complaint (*Id.* at 59 ¶ 88). Dr. Moreau provided USOPC with his Initial Disclosures in April 2020, at which time USOPC learned Dr. Moreau had taken documents from USOPC (*Id.* at 59-60 ¶ 89). In May 2020, USOPC received written discovery responses from Dr. Moreau which contained allegedly confidential and proprietary information (*Id.* at 60 ¶ 90). Dr. Moreau "admitted to taking USOPC property" and "not returning such property upon his termination" in his June 2020 deposition (*Id.* at 60 ¶ 92). USOPC filed its Counterclaims in September 2020, bringing claims for civil theft, conversion, breach of contract, and violations of the Defend Trade Secrets Act and Colorado Uniform Trade Secrets Act based on Dr. Moreau's alleged taking of USOCP's confidential and proprietary information (*See* ECF No. 66).

## II. ANALYSIS OF DR. MOREAU'S MOTION

Having considered USOPC's Counterclaims, Dr. Moreau's Motion, USOPC's Response, Dr. Moreau's Reply, the briefs' attachments, and relevant legal authority, the Court denies Dr. Moreau's Motion. The Court addresses Dr. Moreau's arguments in turn.

### A. Application of Colorado's anti-SLAPP Law in Federal Court

Dr. Moreau argues that C.R.S. § 13-20-1101, Colorado's anti-SLAPP[2] statute, applies in federal court—and therefore to USOPC's Counterclaims—because its enforcement in federal court guards a "substantive right" that does not run afoul of the Federal Rules Enabling Act, 28 U.S.C. § 2072, or *Shady Grove Orthopedic Associates, P.C. v. Allstate Insurance Company*, 559

---

[2] "SLAPP" stands for "Strategic Lawsuits Against Public Participation."

U.S. 393 (2010) (ECF No. 171 at 12).[3] USOPC contends that Colorado's anti-SLAPP law is a "procedural tool" inapplicable in federal court (ECF No. 209 at 2, 10). According to USOPC, the Federal Rules of Civil Procedure are the "sole available methods" for the relief that Dr. Moreau seeks, and that because the anti-SLAPP law is a state rule of procedure, it "conflicts" with them and cannot be applied in federal court (*Id.* at 3, 13). The Court agrees with Dr. Moreau that Colorado's anti-SLAPP statute is applicable in federal court.

As a threshold matter, the Court notes that few state appellate courts and federal district courts have addressed the scope of Colorado's anti-SLAPP statute. *See, e.g.*, *L.S.S. v. S.A.P.*, 2022 COA 123, ¶ 20 (Colo. App. 2022) ("[F]ew cases have applied Colorado's anti-SLAPP statute."); *Stevens v. Mulay*, No. 19-CV-01675-REB-KLM, 2021 WL 1153059, at *2 n.7 (D. Colo. Mar. 26, 2021) ("Colorado's anti-SLAPP law is relatively new and untested."). Because Colorado's anti-SLAPP statute "tracks California's [anti-SLAPP] statute almost exactly," state and federal courts have turned to California courts' interpretation of California's anti-SLAPP statute in construing and applying Colorado's anti-SLAPP statute. *See Stevens*, 2021 WL 1153059, at *2 n.7; *see also L.S.S.*, 2022 COA 123, ¶ 20 ("[W]e look to California case law for guidance" in "considering a special motion to dismiss" under Colorado's anti-SLAPP law"); *cf.* Cal. Civ. Proc. Code § 425.16. The Court likewise turns to other courts' construction of § 425.16 in analyzing Colorado's anti-SLAPP law.

Dr. Moreau contends application of Colorado's anti-SLAPP law in federal court is proper under Justice Stevens' concurrence *Shady Grove*, 559 U.S. 393 (2010) (*See* ECF No. 171 at 9-

---

[3] The Court has jurisdiction over this action and USOPC's Counterclaims pursuant to 36 U.S.C. § 220505(b)(9). Under § 220505(b)(9), when a plaintiff sues a federally charted corporation such as USOPC and the suit relates to "the corporation's responsibilities," the corporation may remove the action to federal district court. The district court shall have original jurisdiction "without regard to the amount in controversy or citizenship of the parties involved." *Id.* The Court has supplemental jurisdiction over USOPC's state and common law counterclaims under 28 U.S.C. § 1367.

12).[4] The Court acknowledges that federal appellate courts are split on the applicability of certain states' anti-SLAPP laws in federal court under *Shady Grove. See Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1337 (D.C. Cir. 2015) ("A federal court exercising diversity jurisdiction therefore must apply Federal Rules 12 and 56 instead of the D.C. Anti–SLAPP Act's special motion to dismiss provision."); *but see Godin v. Schencks*, 629 F.3d 79, 86 (1st Cir. 2010) ("[N]either [Rules 12 or 56 were] meant to control the particular issues under" Maine's anti-SLAPP statute). The Tenth Circuit has also concluded that New Mexico's anti-SLAPP statute is a purely "procedural mechanism" inapplicable in federal court. *Los Lobos Renewable Power*, 885 F.3d at 673.[5] But—as the parties and Colorado courts acknowledge—cases interpreting *California*'s anti-SLAPP law guide the Court's analysis, as the California anti-SLAPP statute is most similar to Colorado's anti-SLAPP statute (ECF Nos. 171 at 12, 209 at 12). *See also L.S.S.*, 2022 COA 123, ¶ 20; *Stevens*, 2021 WL 1153059, at *2 n.7.

---

[4] Under the framework set forth in Justice Stevens' *Shady Grove* concurrence, state laws that solely address procedural issues do not apply in federal court. *See Shady Grove*, 559 U.S. at 417 (Stevens, J., concurring). However, Justice Stevens stated that "federal courts must apply" certain state procedural rules if they function "as part of the State's definition of substantive rights and remedies." *Id.* at 416–17. *Shady Grove* concerned the applicability of state law in federal diversity actions. *See id.* As noted above, the Court has jurisdiction over this action pursuant to 36 U.S.C. § 220505. Nonetheless, the Court finds that *Shady Grove*'s emphasis on the applicability of state law in the diversity context does not limit its relevance here, given especially that Colorado's anti-SLAPP law is a state law Dr. Moreau seeks to enforce in federal court. Moreover, the Tenth Circuit has applied *Shady Grove* in analyzing another anti-SLAPP statute's applicability in federal court. *See Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 673 (10th Cir. 2018). *See also Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1237 n.2 (10th Cir. 2020) (concluding that same conflicts analysis applies in diversity actions and to state law claims under supplemental jurisdiction).

[5] USOPC argues *Los Lobos* is dispositive and precludes the application of Colorado's anti-SLAPP statute in federal court (ECF No. 209 at 11). The Court disagrees. *Los Lobos* and New Mexico's anti-SLAPP law it analyzed are meaningfully distinguishable. The *Los Lobos* court reasoned that New Mexico's anti-SLAPP law was "purely *procedural* . . . ." 885 F.3d at 670 (original emphasis). Indeed, unlike Colorado and California's anti-SLAPP statutes, New Mexico's anti-SLAPP statutes does not impose a burden shifting framework on parties. *See* N.M.S.A.§ 38-2-9.1; *cf.* § 13-20-1101(3)(c); § 425.16(b)(3). The *Los Lobos* court itself recognized the absence of this burden-shifting framework in New Mexico's anti-SLAPP statute was central to its analysis, and distinguished California's anti-SLAPP statute on this basis. *See* 885 F.3d at 670 ("Unlike many other states' anti-SLAPP statutes that shift *substantive burdens* of proof or alter *substantive standards*, or both, under no circumstance will the New Mexico anti-SLAPP statute have *any* bearing on the suit's merits determination" (citing *Makaeff v. Trump Univ., LLC*, 715 F.3d 254 (9th Cir. 2013) to distinguish California anti-SLAPP statute from New Mexico's statute) (first two emphases added)). For this reason *Los Lobos* does not advance USOPC's argument.

Federal courts in California, including the Ninth Circuit, have determined that California's anti-SLAPP law applies in federal court. *See, e.g.*, *Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004). The Ninth Circuit had recent occasion to address whether its "long line of precedents holding that California's anti-SLAPP statute applies in federal court" are "irreconcilable" with *Shady Grove. CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1138 (9th Cir. 2022). They are not. *See id.* at 1143. The Ninth Circuit concluded *Shady Grove* was "reconcilable" with its own interpretation of California's anti-SLAPP statute in prior cases, including *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833–34 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018). *See id. Shady Grove* and California's anti-SLAPP statutes were reconcilable, the Ninth Circuit reasoned, because California's anti-SLAPP statute has been interpreted to eliminate conflicts between standards in the Federal Rules of Civil Procedure and the anti-SLAPP statute. *See id.* California's anti-SLAPP statute is applicable in federal court because, under the Ninth Circuit's construction of the statute, challenges to the "legal sufficiency" claims "made pursuant to California's anti-SLAPP statute must be analyzed" under Rule 12(b)(6), and "challenges to [the] factual sufficiency" must be analyzed under the "same standard as Rule 56 . . . ." *Id.*; *see also Planned Parenthood*, 890 F.3d at 833-34. Therefore, "California's anti-SLAPP statute applied" in federal court. *CoreCivic*, 46 F.4th at 1143.

The Court finds *CoreCivic*'s reasoning persuasive. Moreover, prior Ninth Circuit cases—on which *CoreCivic* relied in concluding that *Shady Grove* and California's anti-SLAPP statute were reconcilable—that have not explicitly applied the *Shady Grove* framework have nonetheless applied the same test used in the Tenth Circuit for assessing potential conflicts between state laws and federal rules.[6] For example, in *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir.

---

[6] When assessing potential conflicts between a state law and federal rule in the Tenth Circuit, a court asks if there is a "direct collision" between the state law and federal rule; if there is no "direct collision," then the court must "wade

2001), the Ninth Circuit concluded two subsections of California's anti-SLAPP statute impermissibly "collided" with Rule 56. *But see U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972 (9th Cir. 1999) (concluding California anti-SLAPP statute's motion to strike and fee subsections "can exist side by side" with Rules 8, 12, and 56 (quotations omitted)). In reaching this conclusion, the *Metabolife* court asked whether use of the anti-SLAPP statute would result in a "direct collision" with Federal Rule of Civil Procedure 56 and, if not, whether application of the anti-SLAPP law was appropriate under *Erie v. R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). 264 F.3d at 845-46 (quotation omitted); *see also Newsham*, 190 F.3d at 972-93 (analyzing California anti-SLAPP provisions by first asking if "direct collision" with Federal Rules existed and, if not, that the court must make an "*Erie* choice" (quotations omitted).

The Ninth Circuit's analyses of any potential conflicts between California's anti-SLAPP statute and the Federal Rules of Civil Procedure are relevant to the Court's own analysis of Colorado's anti-SLAPP statute, given that the Ninth and Tenth Circuit apply the same framework for assessing potential procedural conflicts between state and federal rules.[7] *See Metabolife*, 264 F.3d at 845; *Racher*, 871 F.3d at 1162-63; *see also Stevens*, 2021 WL 1153059, at *2 n.7 (noting Colorado's anti-SLAPP statute "tracks California's statute almost exactly"). And under this framework, California's anti-SLAPP statute has passed muster and applied in federal court. *See, e.g.*, *Metabolife*, 264 F.3d at 845-46 (citing *Newsham*, 190 F.3d at 970-93).

---

into [the] murky waters" of *Erie v. R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  *See Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162–63 (10th Cir. 2017) (quotations omitted).

[7] Over the years, the Tenth Circuit has articulated the governing *Shady Grove* test in different ways. *See, e.g.*, *Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 983 n.7 (10th Cir. 2010); *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162-64 (10th Cir. 2017) *but cf. Stender v. Archstone-Smith Operating Tr.*, 958 F.3d 938, 943 (10th Cir. 2020). The Court notes the different ways in which the Tenth Circuit has articulated the *Shady Grove* test, but follows the *Racher* formulation of the *Shady Grove* framework in its analysis because *Racher* predates *Stender*. *See Haynes v. Williams*, 88 F.3d 898, 900 n.4 (10th Cir. 1996) (instructing courts to follow prior published Tenth Circuit panel decisions over subsequent panel decisions absent en banc reconsideration or contrary Supreme Court caselaw).

Of course, readings of *CoreCivic*, *Planned Parenthood*, and *Metabolife* make clear that not *all* provisions of California's anti-SLAPP law are applicable in federal court. For instance, the filing of a motion under California's anti-SLAPP statute stays discovery in an action pending courts' resolution of the motion. *See* § 425.16(g). Colorado's anti-SLAPP law contains a materially identical provision. *See* C.R.S. § 13-20-1101(6) ("All discovery proceedings in the action are stayed upon the filing of a notice of motion made pursuant to this section.").[8] The Ninth Circuit and other California federal courts have held that this provision in California's anti-SLAPP statute *would* conflict with the Federal Rules of Civil Procedure, and for this reason have declined to enforce this provision as a categorical and immediate discovery stay when adjudicating anti-SLAPP motions in federal court. *See Metabolife*, 264 F.3d at 846 ("[B]ecause the discovery-limiting aspects of [§ 425.16(g)] collide with the discovery-allowing aspects of Rule 56, these aspects of [the statute] cannot apply in federal court." (quotation omitted)); *see also Todd v. Lovecruft,* No. 19-CV-01751-DMR, 2020 WL 60199, at *8 (N.D. Cal. Jan. 6, 2020) (explaining application of § 425.16 in federal district court in light of Ninth Circuit law). But—despite the fact that certain *subsections* of California's anti-SLAPP law are applied differently in California federal courts than California state courts to avoid conflicts with the Federal Rules of Civil Procedure— nothing prohibits a party from filing a motion under California's anti-SLAPP statute. *See Metabolife*, 264 F.3d at 845–46 (citing *Newsham*, 190 F.3d at 970–73).

USOPC contends that Colorado's anti-SLAPP law is inapplicable in federal court because it, like the anti-SLAPP statute analyzed in *Abbas*, requires a plaintiff to establish a "reasonable

---

[8] In its Opposition to Dr. Moreau's Motion, USOPC contends another provision in Colorado's anti-SLAPP statute renders Dr. Moreau's motion untimely (ECF No. 209 at 1 n.1). This provision in Colorado's anti-SLAPP statute requires that anti-SLAPP motions be filed "within sixty-three days after service" of the complaint or counterclaim. *See* § 13-20-1101(6). But this time limitation is precisely the type of procedural limitation that the Ninth Circuit has ruled directly conflicts with the Federal Rules of Civil Procedure and is therefore inapplicable in federal court. *Cf. Metabolife*, 264 F.3d at 846. The Court finds the Ninth Circuit's reasoning persuasive, and declines to bar Dr. Moreau's motion on timeliness grounds.

likelihood that [he] will prevail on [his] claim" under a burden-shifting framework. § 13-20-1101(3)(c); *see also Abbas*, 783 F.3d at 1332. Dr. Moreau cites *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1237 (10th Cir. 2020) for the proposition that federal appellate courts are split on whether anti-SLAPP laws are applicable in federal court (ECF No. 171 at 9). In *Barnett*, the Tenth Circuit considered *Abbas*'s reasoning "persuasive" in assessing the applicability of Oklahoma's anti-SLAPP statute, the Oklahoma Citizens Participation Act ("OCPA"), which contained a similar burden-shifting framework. However, *Barnett* did not reach the ultimate question of whether the OCPA was applicable in federal court. *See id.* at 1238 (declining to "decide that issue" because dismissal of state law claims under district court's supplemental jurisdiction was appropriate on other grounds). At most, the *Barnett* court looked favorably at *Abbas*'s conclusion that Washington D.C.'s anti-SLAPP statute—which also contained a burden-shifting framework—was inapplicable in federal court, while also noting a circuit split on this issue. *See id.* at 1237 n.5; *id.* at 1238. *See also Abbas*, 783 F.3d at 1333-34.

A district court in the Tenth Circuit, in determining whether Kansas' anti-SLAPP statute applied in federal court, also considered *Abbas*'s persuasiveness. *See Caranchini v. Peck*, 355 F. Supp. 3d 1052, 1057 (D. Kan. 2018). *Caranchini* concluded that Kansas' anti-SLAPP statute applied in federal court and rejected *Abbas* in arriving at this conclusion. *Id.* at 1061. *Abbas* did not control, the *Caranchini* court reasoned, because *Abbas* "did not discuss the practical effects of *not* applying these statutes in federal court." *Id.* (emphasis added). According to *Caranchini*, application of Kansas' anti-SLAPP law was "most consistent with the purposes of the *Erie* doctrine": the statute's federal court application discouraged forum shopping and "inequitable administration of the laws." *Id.* at 1060 (citation omitted).

The First Circuit, in concluding Maine's anti-SLAPP law—which also contains a burden-shifting framework—was applicable in federal court, likewise considered *Erie*'s "dual aims" in arriving at its conclusion. *Godin*, 629 F.3d at 91-92 ("Declining to apply [Maine's anti-SLAPP statute] in federal court would disserve the dual aims of *Erie*" (capitalization omitted)).[9] *Abbas* and *Barnett* failed to consider *Erie* at all in reaching their contrary conclusions. But if, as the *Barnett* court suggested, there is "no real difference between the OCPSA and the Federal Rules," then Tenth Circuit precedent would require consideration of *Erie* at the next stage of analyzing a potential conflict between an anti-SLAPP statute and the Federal Rules. *See Racher*, 871 F.3d at 1163 ("If there is no direct collision, however . . . the [conflicts] analysis must proceed under *Erie*." (citation omitted)).

Like *Godin*, the Ninth Circuit has interpreted California's anti-SLAPP statute—which contains materially identical provisions to Colorado's anti-SLAPP statute—as existing "side by side" with Federal Rules of Civil Procedure 8, 12, and 56 without directly colliding. *See Newsham*, 190 F.3d at 972. According to the Ninth Circuit, these Rules of Civil Procedure were not intended to "occupy the field" of pretrial procedures aimed at "weeding out" unmeritorious claims. *Newsham*, 190 F.3d at 972.; *see also Baral v. Schnitt*, 1 Cal. 5th 376, 384 (2016) ("[California's] anti-SLAPP statute . . . provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity.").  Moreover, California's anti-SLAPP statute was "crafted to serve an interest not directly addressed by the Federal Rules: the protection of 'the constitutional rights of freedom of speech and petition for redress of grievances.'" *Newsham*, 190 F.3d at 972 (quoting § 425.16(a)). So too with Colorado's anti-SLAPP statute. *See* § 13-20-1101(2)(a)(IV) (protecting

---

[9] Of course, *Godin* was not wholly reliant on *Erie* in determining that Maine's anti-SLAPP statute applies in federal court. *Godin* further concluded that Maine's anti-SLAPP statue contained "substantive and procedural aspects" and that the statute did not conflict with Federal Rules 12 and 56. *See Godin*, 629 F.3d at 89.

"acts" done "in furtherance of the exercise of the constitutional right of petition" or "right of free speech").[10]

\* \* \*

Given that California's anti-SLAPP statute and Colorado's anti-SLAPP statute are "substantively identical," the Colorado Court of Appeals has directed courts to California law construing California's anti-SLAPP statute for construing Colorado's own anti-SLAPP statute. *See L.S.S.*, 2022 COA 123, ¶¶ 20, 23. The Ninth Circuit has held that there is no conflict between the Federal Rules of Civil Procedure and the provisions of California's anti-SLAPP law that prohibits the filing of special anti-SLAPP motions. *See Metabolife*, 264 F.3d at 845–46; *see also* § 425.16(b). And Colorado's anti-SLAPP statute contains a substantively identical provision to the provision in California's anti-SLAPP statute that the Ninth Circuit has consistently affirmed is applicable in federal court. *See* C.R.S. § 13-20-1101(3)(a); *see also* § 425.16(b); *Metabolife*, 264 F.3d at 845. Accordingly—in light of the statutes' substantively identical provisions—the Court concludes that Colorado's anti-SLAPP law is applicable in federal court.[11] As *CoreCivic*

---

[10] Dr. Moreau notes that there is an "insignificant" difference in California's and Colorado's anti-SLAPP statutes regarding the burden a plaintiff must satisfy (ECF No. 171 at 12). *See* § 425.16(b)(3) (requiring a plaintiff to show "probability" of prevailing on claim); *but see* § 13-20-1101(3)(a) (requiring a plaintiff to show a "reasonable likelihood" of prevailing on a claim). Despite these textual differences, the Court finds the Ninth Circuit's reasoning in *Newsham* persuasive that Rules 8, 12, 56 do not occupy the field of pretrial procedures, and are not aimed protecting the rights that the anti-SLAPP statutes are intended to protect. *See Newsham*, 190 F.3d at 972. Moreover, the Colorado Court of Appeals has held that the language is California's anti-SLAPP statute and Colorado's anti-SLAPP statute are "substantively the same." *L.S.S.*, 2022 COA ¶ 23 n.3.

[11] As discussed above, the Ninth Circuit has declined to apply the discovery-staying provision of California's anti-SLAPP statute in federal court because this provision does conflict with the Federal Rules. *See Metabolife*, 264 F.3d at 846. The parties have not briefed the applicability—or inapplicability—of the discovery-staying provision in Colorado's anti-SLAPP law in federal court. For this reason, the Court expresses no opinion on the applicability of this provision in Colorado's anti-SLAPP statute; only that, as Dr. Moreau argues, motions under Colorado's anti-SLAPP law are applicable in federal actions (*See* ECF No. 171 at 9-10).

explained, nothing in *Shady Grove* precludes the statute's application.[12] *See CoreCivic*, 46 F.4th at 1143.

## B. Application of Colorado's anti-SLAPP Framework to USOPC's Counterclaims

Before proceeding in its analysis of Dr. Moreau's anti-SLAPP motion, the Court provides a summary of the case's procedural posture. Discovery closed on October 4, 2022 (*See* ECF No. 306). Dispositive motions are due by November 28, 2022 (ECF No. 303). Considering this, the Magistrate Judge recently denied USOPC's request to dispose Dr. Moreau's spouse, stating that discovery "simply has to stop in this case" (ECF No. 306). With this case's procedural posture in mind, the Court proceeds in its application of Colorado's anti-SLAPP statute to USOPC's Counterclaims.

In federal cases applying California's anti-SLAPP statute, courts must determine whether the basis of an anti-SLAPP motion is legal or factual. *See Planned Parenthood*, 890 F.3d at 833 ("[Courts] review anti-SLAPP motions . . . under different standards depending on the motion's basis"). If the anti-SLAPP motion mounts a legal challenge, courts assess the motion under Federal Rule of Civil Procedure 12(b)(6). *See id.* at 833-34. If the anti-SLAPP motion mounts a factual challenge, courts assess the motion under Federal Rule of Civil Procedure 56. *See id.* at 834. Assessment of Dr. Moreau's legal challenges under Rule 12(b)(6) and his factual challenges under

---

[12] The Court also notes that Colorado's anti-SLAPP statute, like New Mexico's anti-SLAPP statute, imposes an expedited hearing schedule for anti-SLAPP motions. *See* § 38-2-9.1(A); *see also* § 13-20-1101(5). Under *Los Lobos*, this provision would likely be inapplicable in federal court. *See Los Lobos*, 885 F.3d at 669-670. No party has briefed the applicability of this *specific* provision in federal court; instead, USOPC argues more broadly that *Los Lobos* dispositively precludes application of Colorado's entire anti-SLAPP statute (*See* ECF No. 209 at 11). Therefore, the Court expresses no opinion on the applicability of this provision in Colorado's anti-SLAPP statute—only that this specific provision would appear to conflict with the Tenth Circuit's reasoning in *Los Lobos*. The Court further notes, however, that under Ninth Circuit law subsections of California's anti-SLAPP law that would otherwise violate the Federal Rules of Civil Procedure or run afoul of *Shady Grove* have not rendered the entire statute—which, like Colorado's, imposes a substantive burden-shifting framework—inapplicable in federal court. *See, e.g., Metabolife*, 264 F.3d at 846.

Rule 56 ensures that there is no collision between these Federal Rules and application of Colorado's anti-SLAPP statute in federal court. *See, e.g., Planned Parenthood*, 890 F.3d at 834.

Dr. Moreau appears to mount both legal and factual challenges to USOPC's Counterclaims, arguing that the Counterclaims' allegations "are without factual or legal support" (*See* ECF No. 171 at 20). Therefore, the Court's analysis proceeds in two stages. First, the Court applies the anti-SLAPP two-step framework to Dr. Moreau's legal challenge; if any of USOPC's counterclaims "[do] not survive that analysis, they [are] dismissed as under Rule 12." *Todd*, 2020 WL 60199, at *8. The Court would then entertain whether to grant leave to amend the Counterclaims. *See Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) ("[G]ranting [an] anti-SLAPP motion to strike . . . without granting . . . leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment."). Second, after any allowed amendments to the counterclaims, and after discovery has been conducted, the Court would then address factual challenges to the subject claims. *See Todd*, 2020 WL 60199, at *8; *accord Planned Parenthood*, 890 F.3d at 834 (concluding that when an anti-SLAPP motion challenges the "factual sufficiency of a claim," the Rule 56 standard applies and "discovery must be allowed, with opportunities to supplement evidence based on the factual challenge before any decision is made by the court").

## C. Legal Challenge to USOPC's Counterclaims

With this framework in mind, and having established Colorado's anti-SLAPP statute applies, the Court turns to whether USOPC's Counterclaims survive Dr. Moreau's motion based on the legal challenge. This analysis proceeds in two steps. First, the Court must determine whether the defendant—in this case, Dr. Moreau, as the party defending himself from USOPC's Counterclaims —has made a "threshold showing that the conduct" underlying the plaintiff's claim

"falls within the scope of the anti-SLAPP statute." *L.S.S.*, 2022 COA 123, ¶ 21. This means that the underlying conduct arises from an act "in furtherance of [the defendant's] right of petition or free speech . . . in connection with a public issue." *Id.* (citing § 13-20-1101(3)(a)). The burden the anti-SLAPP statute's first step imposes is not "particularly demanding." *Todd*, 2020 WL 60199, at *11.

If the defendant—in this instance, Dr. Moreau—meets his step one burden, the Court proceeds to the anti-SLAPP statute's second step. There, the Court considers the pleadings and affidavits and determines whether the plaintiff—in this instance, USOPC—has established a "reasonable likelihood" of prevailing on his claim. *Id.* at ¶ 22 (quoting § 13-20-1101(3)(a)-(b)). This process is identical to the process used in assessing anti-SLAPP motions under California's anti-SLAPP statute. *See Baral*, 1 Cal. 5th at 384 (describing two-step process for resolving anti-SLAPP motions). Applying this two-step framework, the Court first considers whether Dr. Moreau has shown his conduct falls within the anti-SLAPP's statutes protection, then whether USOPC has shown it has a reasonable likelihood of prevailing on its counterclaims.

### 1. Anti-SLAPP Step One

Dr. Moreau argues that he has met his first step burden under Colorado's anti-SLAPP law because USOPC's Counterclaim alleges that he shared USOPC's proprietary information with third parties, and that in bringing this lawsuit against USOPC he filed unsealed privileged and proprietary information (ECF No. 171 at 14-15; *see also* ECF No. 66 at 59 ¶¶ 86-88).[13] This alleged conduct, Dr. Moreau contends, amounts to petitioning activity protected under Colorado's anti-SLAPP statute—especially since he retained and used the allegedly proprietary information to

---

[13] Dr. Moreau also argues that his engagement with the news media is also protected activity under the anti-SLAPP statute (*See* ECF No. 171 at 18). The Court need not address this argument because, for the reasons discussed further below, the allegations in USOPC's Counterclaims concern Dr. Moreau's acquisition of its allegedly confidential material, not his engagement with the news media after filing this lawsuit (*See generally* ECF No. 66).

"fram[e] and support" his claims against USOPC (ECF No. 171 at 15). USOPC argues that Dr.

Moreau has not met his first step burden because there is no legal justification for Dr. Moreau's

conduct, and that its Counterclaims do not "arise" from his right to petition (ECF No. 209 at 13-

14). Fundamentally, USOPC argues that its Counterclaims "strictly involve" Dr. Moreau's alleged

misappropriation of its confidential information and trade secrets, not any protected activity under

the anti-SLAPP statute (*Id.* at 16). The Court agrees with Dr. Moreau.

In determining whether Dr. Moreau has met his first step burden under the anti-SLAPP

statute, the Court examines the "principal thrust or gravamen" of USOPC's Counterclaims.

*Freeman v. Schack*, 154 Cal. App. 4th 719, 727 (2007) (quotation and emphasis omitted). Where

a "mixed" claim is based on allegedly protected and unprotected activity under the anti-SLAPP

statute, courts must determine whether the allegedly protected activity is "merely incidental" to

the unprotected conduct. *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures*, 184

Cal. App. 4th 1539, 1551 (2010) (quotation omitted). When allegations referring to arguably

protected activity are "only incidental to a [claim] based essentially on nonprotected activity,"

these incidental allegations are insufficient to "subject" the claim to the anti-SLAPP statute.

*Freeman*, 154 Cal. App. 4th at 727 (citation omitted). "This does not suggest, however, that

[courts] need only make a quantitative comparison of allegations of protected versus nonprotected

activity." *Haight Ashbury*, 184 Cal. App. 4th at 1552. At step one of the anti-SLAPP inquiry, a

court's task is "solely to determine whether any portion" of a claim have "even minimal merit

within the meaning of the anti-SLAPP statute." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811,

825 (2011).

Dr. Moreau identifies several allegations in USOPC's Counterclaims in support of his

contention that he has met his step one burden; specifically allegations related to his pre-litigation

activity (*See* ECF No. 171 at 15). USOPC alleges that Dr. Moreau disclosed its confidential information to other individuals "in or around February 2020"—the same month, USOPC alleges, Dr. Moreau initiated this lawsuit (ECF No. 66 at 59 ¶¶ 87-88). Dr. Moreau disclosed USOPC's information by allegedly forwarding information to his own e-mail account, which he then shared with "a number of third parties" (*Id.* at 62 ¶ 108). It was after Dr. Moreau initiated this lawsuit that USOPC learned of his alleged misappropriation of its confidential information (*See id.* at 60 ¶ 90). Dr. Moreau's initial complaint "include[d] extensive confidential and proprietary information" that USOPC "immediately began investigating" (*Id.* at 59-60 ¶¶ 88-89). Indeed, the Counterclaim alleges that Dr. Moreau disclosed his use of USOPC's confidential information "for the first time" in April 2020 when providing USOPC with his Initial Disclosures (*Id.* at 59-60 ¶ 89).

Allegations related to Dr. Moreau's initiation of this lawsuit are protected by the anti-SLAPP statute. To be sure, USOPC's claim against Dr. Moreau is "mixed"—USOPC's claim is based on Dr. Moreau's alleged retention of its allegedly confidential documents and his decision to disclose those documents in bringing this lawsuit. Regarding allegations related to this lawsuit, the constitutional right to petition under the anti-SLAPP statute reaches "communications preparatory to or in anticipation of" filing a lawsuit. *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal. App. 4th 777, 784 (1996) (citing § 425.16(e)); *cf.* C.R.S. § 13-20-1101(2)(a) (defining protected petitioning and speech activity)). *See also Rohde v. Wolf*, 154 Cal. App. 4th 28, 35 (2007) ("[S]tatements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest." (citations omitted). Thus, these allegations are sufficient to satisfy his step one burden under the anti-SLAPP statute.

USOPC argues that despite these allegations, its claim against Dr. Moreau "arises" from his decision to "disregard clear company policy" and take documents containing confidential information that "did not belong to him" (ECF No. 209 at 14). In its Counterclaims, USOPC claims that Dr. Moreau misappropriated its "confidential, privileged, and proprietary property" (ECF No. 66 at 60 (capitalization omitted)). USOPC alleges several facts in support of this claim. For instance, USOPC alleges that Dr. Moreau kept confidential information, including USOPC trade secrets, without USOPC's consent or knowledge (*Id.* at 62 ¶ 108). Furthermore, Dr. Moreau "improperly shared" USOPC's confidential and proprietary information with third parties (*Id.* at 59 ¶ 86). Accordingly, USOPC argues the Counterclaims "strictly involve" Dr. Moreau's "unlawful appropriation" of its confidential information, and therefore Dr. Moreau cannot meet his step one burden under the anti-SLAPP statute (ECF No. 209 at 16).

This argument fails to persuade for several reasons. First, in the context of anti-SLAPP motions, whether the documents are "privileged or confidential" is irrelevant at the first step of the anti-SLAPP inquiry. *See Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 308 (2001). Second, that courts have held that the use of certain documents for pre-litigation purposes is improper in other contexts does not mean that Dr. Moreau's conduct falls outside the anti-SLAPP statute's ambit. *Cf. Xyngular v. Schenkel*, 890 F.3d 868, 874 (10th Cir. 2018) (concluding district court did not abuse its discretion in sanctioning party where the "inquiry . . . was not whether the [at-issue] documents were confidential" but whether the party "acted willfully [or] in bad faith in a way" that abused the judicial process). In the anti-SLAPP context, a party's use of allegedly confidential information for pre-litigation purposes is only fatal at step one where the use of that information is "*conclusively demonstrated* to have been illegal as a matter of law." *Flatley v. Mauro*, 39 Cal. 4th 299, 320 (2006) (emphasis added). *See also Stevens*, 2021 WL

1153059, at *3 (concluding party "survive[d] the first step" of anti-SLAPP inquiry where she did "not dispute" that her activity was unlawful (quotation omitted)). Here, there are no allegations in USOPC's Counterclaims that conclusively establish Dr. Moreau's alleged retention and disclosure of USOPC's confidential documents was illegal or "not in furtherance of the preparation" of his lawsuit. *See Fox*, 89 Cal. App 4th at 308 (concluding party met anti-SLAPP's step one burden where the court could not say "from the record before [it]" that the party's use of confidential information was "not an act in furtherance of the preparation" of lawsuit).[14]

Essentially, USOPC argues that Dr. Moreau cannot establish that its Counterclaims are based on any petitioning activity protected under the anti-SLAPP statute (*See* ECF No. 209 at 13). But USOPC cannot survive Dr. Moreau's anti-SLAPP motion simply by "combining allegations" of protected and nonprotected activity "under the label of one cause of action." *Fox*, 89 Cal. App. 4th at 106 (quotation omitted); *see also Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 674 (2005) ("question[ing]" the "exclusive focus" on issue of alleged misconduct over allegations of "protected activity"). Reviewing the allegations in USOPC's Counterclaims, many concern Dr. Moreau's use of USOPC's confidential information in connection with this lawsuit (*See, e.g.*, ECF No. 66 at 59 ¶ 88). Despite the Counterclaims' other conclusory allegations that Dr. Moreau retained USOPC's confidential information for personal financial benefit, a careful reading of the Counterclaims shows that Dr. Moreau's pre-litigation is not "merely incidental" to USOPC's claims (ECF No. 66 at 58 ¶ 82). *See Haight Ashbury*, 184 Cal. App. 4th at 1551.

---

[14] In support of its argument that Dr. Moreau cannot meet his step one burden, USOPC points to allegations that Dr. Moreau violated the terms of its "Confidentiality and No Prohibited Contact Statement" Agreement and USOPC's "Code of Conduct"—both of which required Dr. Moreau to "maintain the confidentiality" of its proprietary information, and to return all confidential materials to USOPC "upon his termination" (Id. at 61, 62 ¶¶ 102-04, 106). However, as discussed above, *Fox* forecloses this argument. *See Fox*, 89 Cal. App 4th at 308.

Allegations in USOPC's Counterclaims demonstrate that Dr. Moreau's use of its allegedly confidential information was "an act" done in furtherance of protected activity under the anti-SLAPP statute. *Fox*, 89 Cal. App. 4th at 106. USOPC's counterclaim that Dr. Moreau misappropriated its confidential information is based largely on Dr. Moreau's protected activity. *See Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 673 (2005) ("[T]he fact is that some of the alleged *actions* constituting these breaches of duty involved petitioning activity . . . ." (original emphasis)). Colorado's anti-SLAPP statute, like California's, covers claims "arising from *any act* of that person" protected by the statute. § 13-20-1101(3)(a) (emphasis added); *cf.* § 425.16(b)(1). *See also Oasis West Realty*, 51 Cal. 4th at 825 ("[The] task is solely to determine whether any portion of [the] causes of action have even minimal merit within the meaning of the anti-SLAPP statute."). For these reasons, the Court agrees with Dr. Moreau that these allegations are sufficient to demonstrate that USOPC's claim challenges protected activity, and that he has met his step one burden under the anti-SLAPP statute (ECF No. 171 at 14-15).[15]

### 2. Anti-SLAPP Step Two

Having concluded that Dr. Moreau has met his step one burden under the anti-SLAPP statute, the Court now shifts to the second step of the anti-SLAPP inquiry. *See L.S.S.*, 2022 COA 123, ¶ 22. USOPC brings counterclaims for conversion, civil theft, breach of contract, and violations of the Defend Trade Secrets Act ("DTSA") and Colorado Uniform Trade Secrets Act ("CUTSA") (ECF No. 209 at 16). USOPC contends essentially that it has a reasonable likelihood

---

[15] Dr. Moreau also argues that USOPC's Counterclaims should be dismissed because he has shown at step one of the anti-SLAPP inquiry that he engaged in protected activity, and that USOPC cannot meet the "sham exception" under *Protect Our Mountain Environment, Inc. v. District Court*, 677 P.2d 1361 (Colo. 1984) (*See* ECF No. 171 at 16-18; *see also* ECF No. 215 at 7). The Court need not address Dr. Moreau's arguments regarding *POME*'s application, however, because Colorado's anti-SLAPP law "codified and expanded the *POME* framework . . . ." *L.S.S.*, 2022 COA ¶ 17. *See also id.* at ¶ 24 (adopting California's two step anti-SLAPP inquiry as "consistent with the terms of Colorado's anti-SLAPP statute").

of prevailing on its counterclaims because Dr. Moreau took confidential information in contravention of various agreements with USOPC, did not return that information to USOPC, and misappropriated its trade secrets (*See* ECF No. 209 at 17-18). Dr. Moreau does not explicitly address the question of whether USOPC has met its step two burden under the anti-SLAPP statute. Instead, he argues that his conduct did not rise to the level of conversion, civil theft, breach of contract, or trade secret misappropriation (*See* ECF No. 215 at 9). The Court agrees with USOPC that it has met its burden under step two of the anti-SLAPP statute.

In considering USOPC's counterclaims, the Court construes Dr. Moreau's argument as a legal challenge to USOPC's ability to meet its step two burden under the anti-SLAPP statute, and applies the Rule 12(b)(6) standard in doing so. *See Planned Parenthood*, 890 F.3d at 834; *see also Todd*, 2020 WL 60199, at *8 ("If the challenges are legal, the court evaluates those challenges under a Rule 12 analysis."); *Tensor L. P.C. v. Rubin*, No. 2:18-CV-01490-SVW-SK, 2019 WL 3249595, at *4 (C.D. Cal. Apr. 10, 2019) ("[T]he Court construes [the] anti-SLAPP motion as challenging the legal sufficiency of [the] claims and will analyze [the] motion under the standards set forth in Rule 12(b)(6)."). Under the Rule 12(b)(6) standard, USOPC's burden under step two of the anti-SLAPP inquiry is "minimal." *Tensor*, 2019 WL 3249595, at *9.

USOPC has met this minimal burden for its conversion, civil theft, breach of contract, and CUTSA claims. Accepting the Counterclaims' allegations and true and interpreting the Counterclaims in the light most favorable to USOPC, *see Mayfield*, 826 F.3d at 1255, USOPC has alleged sufficient factual content to satisfy its burden at step two of the anti-SLAPP inquiry. For example, regarding its conversion claim, USOPC has alleged that Dr. Moreau took USOPC's confidential and proprietary information without USOPC's consent, and that, despite being asked to do so, Dr. Moreau has not returned the confidential information he allegedly misappropriated

(*See* ECF No. 66 at 62 ¶¶ 108-111). *See also Tan v. Det-CO, Inc.*, No. 17-CV-01678-NYW, 2018 WL 922133, at *15–16 (D. Colo. Feb. 15, 2018) (setting forth elements for conversion claims under Colorado law). The Court need not address USOPC's DTSA claim because an anti-SLAPP motion "does not apply to claims asserted under federal law." *Iglesia Ni Cristo v. Cayabyab*, No. 18-CV-00561-BLF, 2019 WL 3997474, at *2 (N.D. Cal. Aug. 23, 2019) (citing *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010)).

The Court harbors doubts that all of USOPC's counterclaims will survive the factual challenges brought by Dr. Moreau. At this time, the Court merely concludes that USOPC has met its minimal burden under the anti-SLAPP statute's second step. *See Tensor*, 2019 WL 3249595, at *9; *see also Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, No. 15-CV-03522-WHO, 2018 WL 5879786, at *4 (N.D. Cal. Nov. 7, 2018), *aff'd*, 793 F. App'x 482 (9th Cir. 2019) (stating that at the "second step of the anti-SLAPP inquiry . . . required probability [of prevailing] need not be high" (quotation omitted)).

* * *

In sum, with respect to Dr. Moreau's legal challenges under the anti-SLAAP framework, the Court has concluded that Dr. Moreau has met his first step burden under the anti-SLAPP statue. USOPC has met its burden under step two of the anti-SLAPP inquiry as to its conversion, civil theft, breach of contract, and CUTSA claims. Because the Court concludes that Colorado's anti-SLAPP statute does not apply to USOPC's DTSA claim, the DTSA claim survives Dr. Moreau's motion for this procedural reason. *See Iglesia Ni Cristo*, 2019 WL 3997474, at *2.

### D. Factual Challenge to USOPC's Counterclaims

However, mindful that Dr. Moreau has also mounted factual challenges to USOPC's Counterclaims, the Court must assess those challenges after the parties have conducted discovery.

*See, e.g.*, *Planned Parenthood*, 890 F.3d at 834. As explained above, discovery in this case is closed and dispositive motions are imminently due. It would make little sense for this Court to entertain factual challenges under the anti-SLAPP framework to USOPC's Counterclaims when the parties have now completed discovery but have not yet submitted those facts for this Court's consideration.[16] For this reason, this case is distinguishable from other cases concerning anti-SLAPP motions, insofar as anti-SLAPP motions are typically adjudicated before or shortly after discovery begins. *See, e.g.*, *Tensor*, 2019 WL 3249595, at *3 (describing case's procedural history where the defendant filed an anti-SLAPP motion to strike the plaintiff's second amended complaint before discovery began).

Dispositive motions are due within two weeks. Therefore, to minimize the exhaustive motion practice and briefing that has already occurred in this case, resolution of Dr. Moreau's factual challenges to USOPC's Counterclaims under the anti-SLAPP framework will occur at the summary judgment stage rather than on a motion to dismiss, as may be more typical under the framework. Adjudicating Dr. Moreau's factual challenges at summary judgment is entirely consistent with the application of the anti-SLAPP statute in federal court. *See Planned Parenthood*, 890 F.3d at 834 ("[W]hen an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply."). Moreover, adjudication of Dr. Moreau's factual challenges at summary judgment is in the best interests of the parties and this Court. Discovery is complete and there is no point in bifurcating the factual reviews required by the anti-SLAPP framework on the one hand, and Rule 56 on the other. As noted above, the reviews are substantially similar. That would simply cause further delay in an extremely protracted case.

---

[16] Dr. Moreau's Special Motion to Dismiss was filed on May 3, 2021, when little, if any, discovery had been conducted.

For the reasons set forth above, Dr. Moreau's Special Motion to Dismiss USOPC's Counterclaims Pursuant to C.R.S. § 13-20-1101 (ECF No. 171, pubic entry 173) is denied.

### III. ANALYSIS OF USOPC'S MOTION

Having considered Dr. Moreau's First Amended Complaint, USOPC's Motion, Dr. Moreau's Response, USOPC's Reply, the parties' subsequent supplemental briefing, and relevant legal authority, the Court denies USOPC's Motion to Dismiss (ECF No, 170).[17]

The Court accepts as true the well-pleaded allegations in Dr. Moreau's First Amended Complaint and interprets those allegations in the light most favorable to him. *See Mayfield*, 826 F.3d at 1255. In the First Amended Complaint, Dr. Moreau alleges that, while employed at USOPC, he discovered a sexual assault incident involving an athlete (*See, e.g.*, ECF No. 103 at 8-9 ¶ 47). Dr. Moreau reported the incident to an upper-level manager at USOPC, who then investigated the incident but declined to report the incident to law enforcement (*See id.* at 9 ¶ 49). USOPC did not report the incident until Dr. Moreau e-mailed higher-level USOPC executives (*Id.* at 9 ¶ 50).

Dr. Moreau discovered and reported similar incidents of misconduct that occurred at USOPC facilities but alleges that USOPC failed to adequately address the severity of these incidents (*See, e.g.*, *id.* at 9-11 ¶¶ 54-60, 62). Dr. Moreau reported to United States Olympic Committee lawyers that USOPC employees failed to meet the standards of care applicable to maintaining athletes' medical charts (*See, e.g.*, *id.* at 11-12 ¶¶ 66, 69). Dr. Moreau also complained

---

[17] After USOPC filed its dismissal motion, Dr. Moreau moved to amend the First Amended Complaint to seek exemplary damages (*See* ECF No. 252). The Magistrate Judge subsequently issued an order granting Dr. Moreau's Motion to Amend (*See* ECF No. 270). In his amendment order, the Magistrate Judge specified that Dr. Moreau's "pleading changes" were limited to "those that concern the exemplary damages" (*Id.* at 6). USOPC then filed a "renewed" Motion to Dismiss with supplemental authority (ECF No. 289). Dr. Moreau filed a Response to USOPC's renewed dismissal motion (ECF No. 292). The Magistrate Judge ruled that USOPC's renewed dismissal motion and Dr. Moreau's Response should be construed as supplemental authority to USOPC's originally filed Motion to Dismiss (ECF No. 296).

to USOPC executives that USOPC failed to adequately address athletes' mental health concerns (*See id.* at 14-15 ¶¶ 78-88). Ultimately, Dr. Moreau's repeated complaints about and opposition to USOPC's deficient practices culminated in his termination (*See id.* at 6-8 ¶¶ 29, 38, 43). In the First Amended Complaint, Dr. Moreau asserts claims for wrongful discharge of public policy, extreme and outrageous conduct, and abuse of process against USOPC, alleging that USOPC terminated him based on his objections to USOPC's deficient practices and that USOPC's Counterclaims are meritless (*See* ECF No. 103 at 37-41).

Reading the First Amended Complaint in its entirety, *see Chilcoat v. San Juan County*, 41 F.4th 1196, 1207 (10th Cir. 2022), Dr. Moreau has alleged plausible claims that meet the "low bar" for surviving USOPC's dismissal motion, *Quintana v. Santa Fe Cnty. Bd. of Commissioners*, 973 F.3d 1022, 1034 (10th Cir. 2020).

## IV. CONCLUSION

Consistent with the above analysis, Dr. Moreau's Special Motion to Dismiss Defendant United States Olympic & Paralympic Committee's Counterclaims Pursuant to C.R.S. § 13-20-1101 (ECF No. 171, public entry at 173) is DENIED, and USOPC's Motion to Dismiss (ECF No. 170) is DENIED.

DATED this 18th day of November 2022.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge